ADOLPH REICHERT et al., complainants,

*v.*

UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA et al., defendants.

[Decided February 3d, 1936.]

*Messrs. Stein, Stein & Stein,* for the complainants.

*Mr. Jerome R. Epstein,* for the defendants Coughlin, Meier et al.

*Mr. Louis B. Zavin,* for the defendant Local 715 et al.

Buchanan, V. C.

The United Brotherhood of Carpenters and Joiners of America is the parent or national organization of the divers local trades unions of carpenters throughout the country. It is an unincorporated association, having its offices and officers at Indianapolis, Indiana. Its membership is composed of the various subordinate or local unions, and the individual members of such locals.

In 1933 there were six of such locals in and near the city of Elizabeth, to wit, Locals No. 167, 687 and 1724 of Elizabeth, No. 330 of Roselle, No. 320 of Westfield and No. 537 of Rahway. Because of the depression, lack of work and possibly other reasons these locals found themselves losing members and in financial and other difficulties, and Local 167 submitted to Local 687 and the others a proposal that the six locals should be consolidated into one. Local 687 rejected the proposal, (as did also the Rahway and Westfield Locals), and thereupon Local 167 submitted it to William L. Hutcheson, the general president of the national body, seeking to have the consolidation effectuated notwithstanding the objections of the other locals.

Hutcheson sent a representative, T. M. Guerin, to investigate and report back to him. Guerin had a conference with the representatives of the six locals and on Saturday, August 5th, wrote report to Hutcheson in Indianapolis, and sent a copy to the locals, recommending consolidation of the four locals, 167, 687, 1724 and 330, and their funds and assets into one consolidated local, (omitting the Rahway and Westfield Locals because they were too far away from Elizabeth).

On Tuesday, August 8th, without more,—and obviously without opportunity for Local 687 to receive the copy of Guerin's report and write Hutcheson its objections to, and its arguments against, the recommendation,—Hutcheson as general president issued an order of consolidation accordingly to be consummated September 6th.

Section 10, paragraph G, of the "Constitution and Laws" of the organization provides:

"Whenever in the judgment of the General President there be a superfluous number of Local Unions in any locality, and he should

deem in his wisdom a consolidation for the best interests of the organization, locally or at large, he shall have power to order two or more of such Local Unions to consolidate and to enforce the consolidation, provided such course receives the sanction of the General Executive Board."

Section 25, paragraph C, of the same, provides:

"A Local Union cannot withdraw from the United Brotherhood or dissolve so long as ten members in good standing object thereto, but shall consolidate with another Local Union on order of the General President with sanction of the General Executive Board or by a majority vote of each Union at a special called meeting after paying up all indebtedness to date of consolidation."

There is no authority, other than the foregoing, for the consolidation of any locals. At the time of the issuance of the consolidation order by Hutcheson, such order had received no sanction or approval from the general executive board; nor was there any such sanction or approval at any time prior to September 15th.

On August 25th, Local 687 wrote to Hutcheson and also to the general executive board, taking exception to Hutcheson's order and asking the board for a hearing. Under date of September 5th Hutcheson sent a reply in which he said "You will comply with (the consolidation), after which you can present your protest to the General Executive Board." The executive board never sent any reply to the letter to it, and gave no hearing.

On September 6th, the other three locals complied with the order of consolidation and turned over all their books, papers, moneys and other effects to the new consolidated local, No. 715. Local 687 did not then comply, (nor has it since complied). On September 12th, it telegraphed Hutcheson asking two weeks' time to call a special meeting of the local in the hope that a satisfactory adjustment might be worked out. Hutcheson replied that they could have two weeks' time "in which to affiliate with the new local, if they would forthwith turn over to the new local all the books, papers and property of local 687."

On September 15th, the general executive board approved Hutcheson's order of consolidation; but no notice thereof was

given to, or received by, Local 687 until after the revocation of its charter.

On September 29th Hutcheson revoked the charter of Local 687 and notified them that they were no longer recognized as being a local of the Brotherhood.

Litigation immediately ensued. On September 20th, Frank Meier, a member of Local 687, filed a bill against the local and its individual officers, subsequently consolidated with the present suit; and shortly thereafter complainants, individual members of Local 687, filed their bill against the national organization, and its officers, and against certain members of Local 167. Eventually a complete new set of pleadings by all parties was filed.

The present amended bill, by complainants as members of Local 687 and on behalf of the members of that Local as a class, sets up, *inter alia,* the foregoing facts and prays *inter alia* that the national organization and Hutcheson as president, be restrained from taking away the charter of the local and from interfering with the functioning of the local as a regular local "provided it conducts itself in accordance with the Constitution and Laws of the national body;" and from demanding or enforcing the transfer of any of the property of Local 687 to any other local or individual. It also prays, as against the national body and individual members of Local 167 and other defendants, decree that the property of Local 687 is held by the present holders in trust for the benefit of the members in good standing of Local 687.

The new, consolidated Local 715 was added as a party, also a number of individual members who have transferred from Local 687 to the new local.

Allegations of favoritism and improper conduct of the organization were abandoned at the hearing.

The individual members of (former) Local 167 filed a counter-claim against complainants and individual members who were or are the officers of Local 687, and against Local 687 and others, seeking restraint against Local 687 and its officers from distributing the property of Local 687 among the individual members or transferring it to any other than the new Local 715 for the benefit of all the union carpenters

and joiners of Elizabeth and vicinity. Local 715 and the added members thereof aforesaid, filed answer, in effect joining in the counter-claim, and seeking adjudication of the rights of the parties as to beneficial ownership in the property aforesaid and an accounting from the officers of Local 687.

The pleadings leave much to be desired; but it sufficiently appears from them, and from the stipulations filed by the parties, and from the briefs, that there is no substantial dispute as to the facts, and that what both sides seek is a determination, under the admitted facts,—

(1) As to the "validity or legality of the suspension and revocation of the charter of Local 687, with respect to the relief sought in the way of restraint against depriving the members of Local 687 of their status and standing as union members."

(2) As to the legal and equitable title and interests in the property of Local 687, as among the several parties.

A preliminary question is raised by the objection by the defendants, or some of them, that this court is without jurisdiction in the cause; that the national body and Hutcheson, the president, although named as defendants, have not been served with process nor subjected personally to the jurisdiction of this court; that they are non-residents and cannot be brought within such jurisdiction; that they have interests in the subject-matter of the cause and are necessary and indispensable parties to any determination herein.

This court usually acts *in personam;* and obviously must needs act *in personam* in issuing an injunction or decree that a party shall or shall not do a certain act or thing. The decree prayed in the complainants' first cause of action, that the national body and Hutcheson as president, be enjoined and restrained "from suspending or lifting the charter of Local 687" and from "interfering with the lawful functioning of Local 687," &c., would obviously be a personal decree, and it would be essential to the validity of any such decree that those parties should have been personally subjected to the jurisdiction of this court. Such personal jurisdiction has not been obtained in this suit, and consequently it seems clear that no valid decree enjoining those parties from the acts

aforesaid can be made herein, (assuming that such decree otherwise should be made).

Service by publication has been made upon the national body and Hutcheson. Such service however, while valid and sufficient as to a proceeding *in rem* or *quasi in rem,* is not sufficient basis for a personal decree. *Cf. McVoy* v. *Baumann, 93 N. J. Eq. 360, 117 Atl. Rep. 717; S. C. on appeal, 93 N. J. Eq. 638, 117 Atl. Rep. 725.*

Restraint against "suspending the charter" would be futile. The situation is not where such suspension is threatened; the act of suspension, whether valid or not, has already taken place. That which could be done would be to enjoin persons within the jurisdiction of this court from doing acts based upon, and in furtherance of, the alleged invalid suspension. That indeed, it would appear from complainants' brief, *is* what is sought by complainants. Restraint against "interfering with the lawful functioning of Local 687" would be so general and indefinite as to be meaningless and futile. The brief says restraint is sought "against depriving the members of Local 687 of their status and standing as union members."

There might well be ground for issuance of restraint by this court against unlawful and unwarranted interference with complainants in their employment as carpenters,— against unjustified acts causing complainants to be denied, or discharged from employment as not being union men. In *Brennan* v. *United Hatters, 73 N. J. Law 729, 65 Atl. Rep. 165,* a local union was held liable in damages for such conduct. In the instant case, however, there is nothing before this court to show that complainants' right to employment as union men has been interfered with, or threatened, by any party to this suit or by any one else, whether within or without this state. Nor is there anything in the proofs or admissions before the court to show that such a result is likely to ensue.

Under the "Constitution and Laws" of this union, it appears that the individuals are at one and the same time members of the union,—the national body,—and of the local. Local 687 has been suspended, or its charter revoked, and it may be assumed, unlawfully so. But it does not appear that

thereby complainants, members of that local, were suspended, or lost, or will lose, their rights or standing as union members. There are clauses providing for the suspension or expulsion of members under certain circumstances, but this can only be done after charges have been preferred and a trial had. There is no evidence even that any such charges or trials have been threatened.

There appears therefore neither need nor justification for issuing restraint against anyone for "depriving the members of Local 687, (complainants) of their status and standing as union members," notwithstanding that it might appear that the suspension of Local 687 was unlawful and invalid.

As to the other phase of the case,—the second cause of action,—however, no doubt is entertained either as to the jurisdiction of the court or the right of complainants to seek a determination by this court. The subject-matter of this cause of action is essentially a trust fund within this state and the jurisdiction of this court,—the funds and property collected and contributed by the members of Local 687, and the legal title and possession of which is in the officers of that local.

It is essentially a proceeding *in rem* or *quasi in rem,* and the *res* is within the jurisdiction. Personal service on the parties claiming an interest in the *res* is not necessary; substituted service,—reasonable notice to them and an opportunity for them to be heard, is sufficient, and that has been given in the present instance to those parties not brought in by actual service or appearance. This court has full power and jurisdiction to ascertain and determine the existence and character of the trust fund, the trusts upon which they are held, the persons beneficially entitled thereto, and the nature and extent of their interests, and to supervise and enforce a due administration of those trusts. The only real difficulty in the instant case is that at the present time there are not before the court sufficient proofs or facts to enable a complete determination on these points to be made.

With the validity of the order for consolidation, merely as an order affecting the organization and regulation of the members of the union in respect to the carrying on of the

work in the carpenter trade, we are not here concerned. In that aspect no property rights are involved, and this tribunal is not charged with any power or duty in regard thereto.

But with regard to the order as it affects the property, and especially with regard to that part of the order (it is not clear whether there was a separate order or a part of the order of consolidation) which directs Local 687 to turn over all of its property and funds to the new consolidated Local 715, the situation is different. The exact terms of the order are not before me, but it sufficiently appears that the order comprises a direction that the funds of the several local unions be placed in one general fund as the property of the new consolidated local, and "part of the funds be used to square up the members in arrears."

It appears that the several locals involved in the consolidation respectively had property and membership approximately as follows:

| Local | Funds | Members | Per Capita Interest |
|-------|-------|---------|---------------------|
| 167 | $6,500 | 325 | $20 |
| 1,724 | 2,100 | 38 | 55 |
| 330 | 345 | 85 | 4 |
| 687 | 16,500 | 85 | 200 |
| | $25,445 | 533 | 48 |

Obviously the effect of the order will be to take from each member of Local 687 about three-quarters of his interest in the funds of Local 687 and give it to the members of locals 167 and 330. If the discrepancy had not been great, doubtless there might be no objection; but to take away seventy-five percent. of one man's property and give it to others is confiscatory, inequitable and unlawful if done without his authorization or consent.

It does not appear from the proofs that any argument or attempt was made by the national body or its president to controvert the evident inequity and injustice of the order, in this behalf; nor has any such attempt been made by counsel for defendants. They seek to justify it on the sole ground that from a legal standpoint it had been consented to and authorized by complainants and all other members of Local

687 by virtue of the contractual agreements entered into at the time, and by the fact, of their becoming members of the national organization and of a local organized under the constitution and laws of the order.

They point to the two sections of the laws of the order quoted in the early part of these conclusions and contend that the right of the national body to order and enforce a consolidation of two or more locals necessarily includes the power and right to order and compel the transfer of the funds. They further rely on paragraph A of section 30 of those laws, which reads as follows:

"If at any time a Local Union should withdraw, lapse, dissolve, be suspended or expelled, all property, books, charter and funds held by, or in the name of, or on behalf of said Local Union must be forwarded immediately by express to the General Secretary, to be held in safe-keeping for the United Brotherhood as Trustee for the carpenters in that locality until such time as they shall reorganize."

and paragraphs A and C of Section 58, which provide that the "General Funds or property of a Local Union" shall be used only for the purpose of the Brotherhood in the carrying on the business of the local as an organization of the Brotherhood, and shall not be divided amongst the members individually.

In the first place it is not perceived that the provisions of section 30, paragraph A, are applicable to the instant case. Local 687 has strictly not withdrawn from the order, lapsed, dissolved, been suspended or expelled. It does not seek to divide its funds among its individual members. From that which is before the court, Local 687 has had no intent or desire to withdraw from the organization, nor to dissolve; it has not lapsed but is still a strong and functioning body. Its desire is to continue, as it has done in the past, as a local of the union; it simply does not wish to consolidate with other locals, (particularly with Local 167, with which it seems to have had some friction), and especially it does not wish to have the larger part of its property taken away and given to other locals. It has refused or failed to obey the order of consolidation, but it has not been suspended or expelled for that or any other reason. The right and power to *suspend*

a local for violation of the laws of the order seems to reside in the "General President in conjunction with the General Vice Presidents." I do not find any provision giving to anyone the right and power to *expel* a local; but if we assume that such right exists somewhere, it assuredly would not be exercisable by any less authority than the right to suspend. No action to suspend has been taken by the general vice-presidents; the only action is by the president alone, and his act does not purport to be an expulsion or suspension as a punishment for disobedience, but he "revokes the charter" of Local 687 as, by what appears to be, an act in furtherance and enforcement of the order for consolidation and the metamorphosis of Local 687 and the other locals into the new Local 715. Furthermore, the national body (nor its president) has not appeared herein or made any claim of right or interest in or to the funds in question," either under section 30 or any other provision; and it is stated by defendants' counsel that the national body makes no such claim but that its only intent and desire is to have the funds turned over to the new consolidated Local 715.

There remain therefore only the sections relating to consolidation, for consideration as affording a possible justification for this transfer of the funds. These sections do not expressly authorize any such transfer or consolidation of the funds: there is no mention made in them of the funds or other property of the locals, but it may well be deemed that in the very nature of things *some* consolidation of funds and property must necessarily be contemplated as inherently incident in a consolidation of the locals, and that hence by necessary implication these sections authorize a consolidation of the funds. So much may be granted; but it by no means follows that hereby is authorized such a consolidation as is here attempted.

It may be assumed for the sake of argument that the order for consolidation of the locals, as such, insofar as concerns the regulation of the work in the carpenter trade, was duly and properly made and is valid as an exercise of an authority vested in the president and executive board by laws of the order to which complainants assented and agreed on becoming members: that it was not requisite to the validity of that

order that the "sanction" of the executive board should precede or accompany the act of the president; and that complainants have no right to question that order, as such, in this court. It may further be assumed that the right to order consolidation of the locals must be deemed to include the right to order *some* consolidation of their funds,—a consolidation of those funds upon some fair and reasonable basis and terms; but it is deemed that it does not include the right to order consolidation of the funds in a manner which is unfair and unreasonable, such as is the case here.

In *State Council, &c.,* v. *Enterprise Council, No. 6, 75 N. J. Eq. 245, 72 Atl. Rep. 19,* our court of errors and appeals had before it a case which, although differing in some particulars from those in the instant case, nevertheless involved the same essential principles and the same essential questions as the present, *i. e.,* the right of a national or superior organization, by virtue of authority of the "laws" of the order, to effectuate a transfer of the property of the members of the subordinate bodies to others, and there held (by express approval of the determination and opinions in certain cited and quoted cases from other states) that no such right exists notwithstanding the "laws" or contract in that behalf,—(see *pp. 252-254*). It is there said, (*p. 254*), "we think it quite certain that the courts can never recognize as valid any rule or law so made" (by a national or superior organization for the government of the subordinate bodies) "the effect of which is to confiscate property or to arbitrarily take away property rights from one set of members and give them to another set; nor will the courts allow or recognize the enforcement of any such rule when its enforcement will accomplish and is designed to accomplish, such a result."

The applicability of this language to the present circumstances is clear. If the sections of the "laws" of this brotherhood purported expressly to confer the power to order and enforce the presently attempted "consolidation" of funds, they would be to that extent held invalid; since they do not expressly so provide, no such meaning or intent is to be ascribed to them by implication.

The situation, as to the equities thereof, is much like that existing in the case of a corporation where its stockholders

have authorized their board of directors to issue and sell further stock of the company at such times and in such manner and on such terms as the directors shall deem for the best interests of the company. The right and power so given to the directors cannot be exercised by them in a way which disregards the equitable rights of the existing stockholders,— among which rights is the right to have the opportunity to maintain their existing status as owners of the corporate property,—to have the opportunity to purchase shares of the new stock in proportion to their already existing holdings; this right being a corollary of the equitable right of the holder of outstanding shares of the corporate stock, such shares being actually worth, say, $200 each, that new shares shall not be issued to others for $100 each, (thereby giving to the new stockholders a portion of the property represented by his present shares) without his first having the opportunity to purchase such new shares prior to any outsider.

So in the instant case, the national body may have the right to "consolidate" the funds of Local 687, but it can do so only in such manner as shall preserve to the members of that local their existing equitable interests therein, or at least the opportunity to protect those interests. Those interests, it is true, are limited and restricted in certain respects, by the laws of the order, as to the manner and method of their enjoyment, but they nevertheless exist in, and are of considerable value and importance to, the members of Local 687. The constitution and laws clearly recognize and express that the property and funds are the property of the Local, i. e., the members of the particular local, albeit subject to certain restrictions.

Just how these interests should, or might be protected, cannot here be determined at this time. There is not before the court the necessary evidence. It appears that there are funds and property of the local of more than one kind,— severally impressed with trusts for devotion to certain different purposes, some of them of a business nature, some of the nature of insurance or fraternal beneficence, and some possibly of still other character; but as to the several amounts of such funds, or the character and terms of those purposes, the court has not been acquainted. Neither has the court

the necessary information as to the details of membership, organization and operation of the union affairs, requisite to enable the formulation of an equitable plan for accomplishing the "consolidation" of the funds which would be practicable and workable under the conditions of this particular situation and these particular union organizations.

It is apparent that there would be many complications involved in the effort to evolve such a plan and that in all probability it should be referred to a master,—preferably one who is a member of, or at least thoroughly familiar with the affairs and working of some union organization of essentially similar kind,—to take the necessary facts and evidence and report what would be in his opinion an equitable plan.

All this, of course, is predicated on the *assumption* hereinbefore stated herein, that the order of consolidation has *some* validity as far as concerns its effect upon the property and assets in question,—that it would have been, or would be, valid, if it made reasonable and fair provision for preserving to the members of Local 687 their equitable rights and interests in the property; or else on the possibility that the complainants may be willing to acquiesce in the order of consolidation if such reasonable and fair provision be made. As matters stand, however, in the case before me, the issues raise the question as to whether or not the order for consolidation has *any* validity as affecting the assets aforesaid. Under the facts it would seem that it must be deemed utterly ineffective in that behalf, unless by some such acquiescence or consent by complainants.

To the validity of the order in question, under the "laws" of the organization, the action of the executive board is requisite; the president has no such power without that concurrence or participation. Assuming that the "sanction" of the executive board need not accompany or precede the action of the president,—that subsequent sanction is sufficient; nevertheless it is requisite to the validity of that action by the board, that it shall have been preceded by a hearing of the parties interested therein and to be affected thereby,—or at least an opportunity to such parties for such hearing. This is fundamental.

The facts show that no hearing was given to complainants

or their local, by the executive board, nor any opportunity to be heard; notwithstanding complainants' written request to the board for such hearing, the board never made any reply; and complainants never even had notice that the board had concurred in the order of consolidation until after the order revoking their charter. Without such hearing, the board had no jurisdiction to make the order of consolidation and the order can have no validity to affect the rights of the parties.

In such a case complainants are not required to exhaust their remedies within the organization before seeking redress in the courts. *International Brotherhood, &c., Paterson* v. *International Brotherhood, &c., Newark, 113 N. J. Eq. 585, 168 Atl. Rep. 65;* neither is such a course requisite where it would be futile,—*Walsche* v. *Sherlock, 110 N. J. Eq. 223, 159 Atl. Rep. 661.* In the instant case, under the "laws" of the organization, appeals are first to the general president, then to the general executive board, and finally to the general convention. The futility of appeal to the president and the executive board is obvious; the general convention meets only once in four years, and the president refused any stay of the consolidation.

It must be held that neither the consolidation order nor the order revoking the charter was of any force or validity to affect the rights of the complainants or the other members of Local 687 in and to the property and assets of that Local, and that the legal and equitable interests in that property remain as they were prior to such orders,—except perhaps as those interests may have been affected by the action of those members of Local 687 who, in obedience to the consolidation order, affiliated themselves with the new Local 715. No issue in regard to this latter question is before the court; and it may well be that none will arise,—that any such members who desire to return to 687 will be received back in view of the fact that they acted under compulsion of the orders of the national organization.

Those allegations of the counter-claim to the effect that complainants intended or threatened to distribute the assets to the individual members of Local 687 are found not established by the proofs, and no order for restraint in that behalf is necessary or justified.