# Raevsky et al. v. Upholsterers' International Union of North America et al.

*Saul C. Waldbaum*, for plaintiffs.

*M. H. Goldstein*, for defendants.

SLOANE, J., March 29, 1940.—This suit in equity was begun by five members of a trade union against the Upholsterers' International Union of North America, its local branch of which plaintiffs are members, and certain officers of the International Union and the local union, in order to seek the chancellor's aid in settling an intra-union election dispute.

The controversy centers around a local election. The president of the International Union by letter addressed to all officers and members of the local ordered that nominations and elections of officers of the local be postponed. It is alleged that this postponement is arbitrary, without authority under the laws of both the International and the local union, and in derogation of plaintiffs' rights. We are asked (negatively) to restrain such postponement, and (affirmatively) to order an election without further delay.

There was a dispute about meetings of the local, but counsel agree that question now is academic, and we therefore simply mention it.

Defendants filed preliminary objections. Some are worthy, some are not.

The first objection raised by defendants is that the bill does not aver what offices are to be filled by the elections nor the dates on which such elections are to be held. The

objection is well taken. The averments say broadly (too broadly) "nominations and elections of officers". Without more specific averments the chancellor would not be able to frame a specific decree if plaintiffs are to prevail. Plaintiffs contend that these facts may be found in the bylaws of the local union. But they have not attached a copy of these bylaws to the bill. Instead, they have alleged that they do not have a copy, that the bylaws are with the secretary. Plaintiffs demand their production at trial.

Supreme Court Equity Rule 35 provides that:

"After a case has been duly commenced, the court, on cause shown, may order the defendant to produce, and permit plaintiff to make a copy of, any books or papers, in defendant's possession or under his control, which are necessary to enable plaintiff properly to prepare his bill, or plaintiff may aver, to the best of his knowledge, information and belief, the substance of the books and papers of which he has not a copy, that he has not been able to procure the same, and pray that defendant be required to set forth the same in full in his answer."

The usual practice is to grant plaintiffs a rule to show cause why an order to produce and examine the needed documents should not be allowed: 8 Standard Pennsylvania Practice 148 et seq. Plaintiffs have averred or done nothing concerning these local bylaws or their appearance, and our only inference is that they are willing to stand on the bill as it now appears. But in its present form, the bill is defective.

Defendants also contend that plaintiffs have not alleged that the bylaws of the local have been approved by the International president as required by article XXI, sec. 14(a), of the General Laws of the International Union. This objection is sound, but the defect was probably the result of an oversight and is amendable.

Defendants claim that there is no allegation which shows a breach of duty on the part of defendants or an interference with plaintiffs' rights. The essence of the bill is a letter sent by the International president ordering

a postponement of the elections. But nowhere in the bill is there any statement that the elections were not held at the proper time or at any other subsequent date. It is not indicated whether or not the officers and members of the local union deferred to the order of the International president. This defect cannot be cured by inference.

Conduct on the part of the International Union cannot be the basis of a cause of action against the local unless the latter at least acquiesces in such conduct. The letter mailed to the members and the officers by the International president ordering the postponement of the elections is not alone sufficient to constitute the basis of equitable relief against either the International or the local union without some indication that the local officers intend to comply with the order. If this bill was filed after the time for the meeting at which nominations were to be received, it was incumbent on plaintiffs to allege that the meeting was not held or that the nominations were not received.

Another deficiency in the bill, not raised by the preliminary objections, but by counsel at the argument, is the lack of any allegation that plaintiffs are members of the local union in good standing. Usually the bylaws of voluntary associations require that members be in good standing before they may participate in elections. If the bylaws of Local Union 77 have such a provision, the allegation should be included in the bill, because, unless plaintiffs are members in good standing, the postponement of elections will not be an interference with their rights. Equity will not intervene on their behalf to compel the holding of an election unless they have a right to such an election.

Defendants also object to the sufficiency of the complaint because it is nowhere alleged that plaintiffs have exhausted their remedies within the association. The law on this subject has been stated recently by our Supreme Court in Heasley et al. v. Operative Plasterers & Cement Finishers International Assn., etc., et al., 324 Pa. 257, 261 (1936):

"Ordinarily courts will not entertain jurisdiction in such cases unless the remedies provided by the laws of the organization have first been exhausted: *Maloney v. United Mine Workers of America, supra* [308 Pa. 251 (1932)]. But here no practical avenue of appeal within the association was open to plaintiffs."

Our problem here is to examine the General Laws of the International Union for a practical method of appeal from the conduct of the president and the officers of the local union in postponing the elections. Article XVIII deals with "Charges and Appeals". Sections 1 to 10 inclusive are entitled "Charges" and prescribe the mode of trial before the general executive board when an officer or member has been accused of violations of the union laws. It is doubtful that these provisions were intended to cover the instant situation. Sections 11 to 21 inclusive are entitled "Appeals". Section 17 is the only one relevant to the present case and provides an appeal to the general executive board by "any member of a local union who is dissatisfied with a decision rendered by the local union or who has been adjudged guilty after a fair trial. . . ." It is not clear that the expression "decision rendered by the local union" would include the postponement of elections by the local officers. However, the interpretation of these provisions as applied to the instant case is a question for the officers of the union charged with their enforcement. It is not the function of this court to interfere with a bona fide interpretation by authorized officers when the clause in question is open to fair interpretation, where the clause is capable of being understood in more than one sense, without depriving members of their rights arbitrarily. It may be that the general executive board will decline jurisdiction of the present dispute. At that time, the jurisdiction of this court will attach. On the other hand, the board may decide that there is a right of appeal under the general laws, and the action of the president was or was not justified. In either event, this court cannot assume jurisdic-

tion until plaintiffs have attempted to utilize those avenues of appeal which superficially at least are presented by the general laws. Under the sections covering appeals, the matter could be disposed of within a month. This is not an unreasonable length of time. If the general executive board should delay its decision arbitrarily, then the intra-union remedy will no longer be practical, and plaintiffs may call upon this court to intervene. At any rate, the lack of an allegation in the bill indicating an exhaustion of intra-union remedies may be cured by amendment.

Certain of defendants' objections are without merit.

Defendants want us to say that the president of the International Union was within his authority in postponing the elections of the local. On what basis I do not know. I have looked, but nowhere in the General Laws of the International Union can I find authority vested in the president or in any other administrative body for postponing elections of a local union. Defendants point to article VII, secs. 3 and 20, of the general laws as possible sources of that authority. Article VII concerns the duties of the president. Section 3 provides that "he shall at all times exercise general supervision over all officers of the International Union, . . . and Local Unions. . . ." Though the language of this section is broad, it is limited to the conduct of the officers of the unions and should not be interpreted to include by implication control over so important a right as the election of officers.

Section 20 provides that "he shall decide all points of law subject to the approval of the General Executive Board". This section was apparently intended to confer on the president the power to decide controversies between factions within unions. But in the present case, there is no legal dispute with respect to the laws of the union. The local constitution no doubt prescribes the time when elections shall be held, and there is no authority vested in the president by implication or otherwise to change that date. The fact that the general executive board will

probably approve the action of the president should have no bearing on this question except that it serves to make a clearer case against the International Union itself. In Article X, sec. 1, the board is given the power of general supervision of the International Union between conventions. This grant of power should only include those matters which are ordinarily under the control of a body of this sort within the terms of the fundamental laws of the association. It is, as it should be, that complete control over the elections of officers of local unions is not one of the ordinary matters within the authority of a supervisory body of this type. Such control would be against local autonomy and the right of interference with that fundamental is not to be lightly inferred. The fact that article I, sec. 1, describes the International organization as an unlimited number of local unions but acknowledge the jurisdiction of the International Union does not add to the powers of the general executive board. Such provision is descriptive merely of the type of organization formed by the parties.

Furthermore, it does not appear improper that the International Union has been made a party defendant. Associations can act only through their agents, and it is apparent that the president was acting on behalf of the International Union when he ordered the postponement of the elections. His letter, which has been made part of the record, in describing the situation leading up to his orders, reads partly as follows:

"This preliminary investigation was necessary in order to ascertain whether there was sufficient justification . . . and sufficient reasons for the *International Union* to intercede in the situation as requested in the petitions." (Italics supplied.)

In the second paragraph he writes about the "antagonism against the International Union". In the third paragraph he refers to "a thorough investigation and constructive action on the part of the International Union in order to assure both the membership of the local union

and the International Union of a united, harmonious organization". Subsequent references in the letter in which he indicates that the matter will be presented to the general executive board establish the responsibility of the International Union for his conduct.

Defendants' counsel quotes from Pratt v. Amalgamated Assn., etc., et al., 50 Utah 472, 167 Pac. 830 (1917). True, it was there held that courts will not review rulings of regularly constituted officers of a trade union, relating to its internal affairs, it being the officers' duty to interpret the constitutional provisions. Although the legal principle embodied in the quotation is sound, it must be applied in light of the background of that case. The dispute arose over a difference of interpretation of the conduct of a member as to whether he had transferred to another local union or had withdrawn. It seems clear from the opinion in the case that the interpretation accepted by the court was made in good faith by officers acting within the scope of their authority. The court said (p. 484) :

"If it be assumed, therefore, that the president of the association considered it a transfer card, while the officers *who had the power and whose duty it was to decide* held it to be a withdrawal card, it was purely a difference of opinion between the president and the officers, and was thus a matter of construction." (Italics supplied.)

Here, there is little doubt that the president did not have the power to postpone the local's elections nor was it his duty to decide when they shall be held.

Defendants contend that this court should not permit plaintiffs to amend the bill because under no circumstances can a dispute of the type involved here constitute the basis of an equitable cause of action. It is their argument that this is a controversy concerning the internal affairs of a labor union in which no property rights of plaintiffs are involved. In order to consider this objection in its true perspective, we must assume for the moment that plaintiffs have alleged properly all the facts which

so far have been found lacking in their bill, e. g., that they are members in good standing, that they have exhausted their remedies within the union, that the officers of the local union have refused to conduct elections.

The Supreme Court in the Heasley case, supra, recognized the necessity of the existence of a property right before a court will intervene in a union dispute. It was found there that the arbitrary expulsion of a member from a labor union interfered with his right to benefits from the general fund of the union and with his right to contract for work, both important property rights. Such matters ought to be developed at trial. It may well be here that the officers have the authority to distribute jobs, collect dues, make expenditures, control the property of the union, pay out strike benefits, and represent the union with the employer. These we know are typical of trade-union duties, through their agents. These are important powers, which in the hands of leaders seeking economic or personal gain may be abused to the detriment of members of a trade union. Such an abuse of power might interfere with the economic welfare of the members as much as expulsion from the union itself. Moreover, it can be said that the right to have an election within a trade union is a property right which courts have recognized: See 86 U. of Pa. Law Rev. 885, and cases there cited.

The cases cited in defendants' brief are for the most part distinguishable because they concern political associations in which the court was unable to find a property right which had been abrogated. Social clubs, political clubs, and trade unions, though all with the same basis of unincorporation, must be differentiated. Our modern economic life so dictates.

Finally, defendants claim that this case falls within the terms of the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, 43 PS §206a et seq., which prohibits the issuance of an injunction in a labor dispute unless certain requirements are fulfilled beforehand. There is

no merit in defendants' contention. Section 3 (c) of the act defines a labor dispute as "any controversy concerning terms or conditions of employment . . . or any other controversy arising out of the respective interests of employer and employe . . .". An intra-union dispute concerning an election does not come within the scope of the act. That this is sound interpretation is confirmed by the recent case of Dorrington et al. v. Manning et al., 135 Pa. Superior Ct. 194 (1938), where it was held, inter alia, that a dispute between members of a union and the union over their right to work for a certain employer and to be reinstated in the union was not a "labor dispute" within the meaning of the act. The court said at page 206:

"So, here, there was no controversy concerning the terms or conditions of employment. . . . This contention grew out of the plaintiffs' endeavoring to get into a union, under an agreement, while the union is trying to keep them out. . . . We can but conclude, therefore, that under the facts before us this was not a 'labor dispute' within the provisions of our statute."

Plaintiffs thus far have failed to do what is required of a plaintiff to entitle him to relief or sanction. "A plaintiff in equity does not recover on proofs alone but on his pleadings and proofs. He must aver in his bill all matters essential to entitle him to recover, and neither implied allegations nor proof of matters not alleged can be made the basis for equitable relief": Caveny v. Curtis et al., 257 Pa. 575, 581.

We think plaintiffs must show:

(a) When and what elections are to be held, and that they were not so held;

(b) That they have a right to complain, that is, that they are members in good standing;

(c) That the local officials have refused to conduct elections;

(d) That they have done what is necessary or reasonable (by way of appeal or otherwise) in accordance with

internal law to have the elections held, or that internal law is unreasonable, and in what respects.

To the extent we have here outlined, we sustain the objections. Plaintiffs may amend accordingly within 20 days hereof.