# MINNESOTA COUNCIL OF STATE EMPLOYEES, NO. 19, AND OTHERS v. AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES AND OTHERS.[1]

June 8, 1945.

No. 34,020.

[1]Reported in 19 N. W. (2d) 414.

*Robins, Davis & Lyons* and *Irvin E. Schermer,* for appellants.
*Padway & Goldberg, David Previant,* and *Thomas O. Kachelmacher,* for respondents.

LORING, CHIEF JUSTICE.

Minnesota Council of State Employees No. 19 and its officers seek to enjoin the American Federation of State, County and Municipal Employees, its parent organization, and certain of its officers from engaging in activities leading to the organization of a new state council for Minnesota in place of plaintiff council, and for such other relief as the court deems just.

On December 26, 1944, upon application of plaintiffs, the district court of Ramsey county issued an order directing defendants to show cause on December 29, 1944, before said court why a temporary injunction to such effect should not be granted. On December 29, 1944, at the hearing, the following proceedings took place:

"ROBERT E. GEHAN, sworn on behalf of plaintiffs:

"DIRECT EXAMINATION.

"Mr. Robins [counsel for plaintiffs]: State your full name.

"Mr. Kachelmacher [counsel for defendants]: * * * defendants will make objection to any testimony on behalf of plaintiffs * * * on the ground * * * there is no basis whatsoever for a proceeding such as this under the laws of the state of Minnesota and there is

no basis or power or jurisdiction in this court to issue an injunction with the remedies requested by these plaintiffs. It is the contention of defendants that *this particular controversy is a labor dispute within the provisions of Mason's Minn. Statutes 4260-7, 1938 Supplement.*

\* \* \* \* \*

"*\* \* \** that there is no property right whatsoever involved here and there is no attempt by these defendants to take any funds or property belonging to this association. There is no allegation \* \* \* that there is any threat of injury to any property right they may have. There is no complaint whatsoever with respect to any of the other items required that they can obtain an injunction *in a labor dispute.* Furthermore, even if this were not considered a labor dispute, the mere fact that there is no property threatened would prevent a court of equity from taking action and preventing these defendants from carrying on.

\* \* \* \* \*

"The Court: *It seems to me that the matter is a labor dispute.* The court has no right to interfere with the internal affairs of this defendant corporation; that substantial and irreparable injury will not result to complainants' property, and that as great injury will be inflicted upon defendants by granting the relief asked for as would be inflicted upon the complainants by the denial of the relief asked. It seems to me that it is not within the power of this court to restrain the action of these defendants. The power of the court in disputes of this kind is limited. Where a dispute comes within the authority of the court to act the court should act, but the court should be careful not to interfere with these matters where its authority to do so is clearly denied or very doubtful." (Italics supplied.)

Mr. Robins thereupon submitted an offer of proof on behalf of plaintiffs. Following this and some additional objections interposed by defendants, the court made its order sustaining defendants' objection, denying plaintiffs' motion for a temporary injunction,

and certified the record to this court for review under Minn. St. 1941, § 185.15 (Mason St. 1940 Supp. § 4260-9). The appeal is from said order.

From the foregoing, although additional grounds were discussed, it is apparent that the court refused jurisdiction of the proceedings and the exercise of its discretion in granting or denying the injunction because of the conclusion that the matter involved constituted a "labor dispute" as defined by Minn. St. 1941, c. 185, particularly §§ 185.13 and 185.18[2] (§§ 4260-7 and 4260-12).

[2]"185.13. No court of the state shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, except after hearing the testimony of witnesses in open court, with opportunity for cross-examination, in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect:

"(1) That unlawful acts have been threatened and will be committed unless restrained, or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act, or actually authorizing or ratifying the same after actual knowledge thereof;

"(2) That substantial and irreparable injury to complainant's property will follow;

"(3) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

"(4) That complainant has no adequate remedy at law; and

"(5) That the public officers charged with the duty to protect complainant's property have failed to furnish adequate protection. * * *"

"185.18, subd. 2. A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more

It is not disputed that the complaint did not contain allegations, nor did the offer of proof contemplate production of evidence, which would sustain findings on five conditions specified in § 185.13, it being plaintiffs' contention that these proceedings did not involve a labor dispute and said section had no application—plaintiffs' relief being sought under and pursuant to §§ 585.01 to 585.04 (Mason St. 1927, §§ 9385 to 9388), relating to the court's jurisdiction in injunction matters generally. The issue presented here is whether or not under the allegations of the complaint and the offer of proof there is involved a labor dispute within the definition thereof set forth in § 185.18, subd. 4.

In substance, the complaint and offer of proof, which for the purpose of these proceedings must be accepted as true, established:

That defendant Federation, affiliated with the American Federation of Labor and hereinafter called the "International," consists of approximately 800 unions called "Locals" and a number of "State Councils" which are affiliations of "Locals" in particular states, with a membership of approximately 50,000 persons engaged in rendering services to governmental units and subdivisions such as state, county, and municipal employes.

That plaintiff council is a member of the International and was granted and issued a charter by the International on November 16, 1942; that it is composed of 13 Minnesota locals of the International with a total membership of 550 persons who are engaged in the activities described; that it pays an annual affiliation fee to the International; that all its members are in good standing and have

employees or associations of employees, or when the case involves any conflicting or competing interests in a 'labor dispute' of 'persons participating or interested' therein.

\* \* \* \* \*

"Subd. 4. The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

in all respects complied with the rules, regulations, constitution, and by-laws of the International.

That both the International and the Minnesota council operate under the International's written constitution, which defines in detail the government, organization, mode of operation, powers, rights, and privileges of the International and the Minnesota State Council; that thereunder the government of the International is vested in an "International Convention" required to convene biennially, in August, in the odd-numbered years, beginning in 1943; that, when the International Convention is not in session, its general executive board, which consists of a president and 11 vice presidents, constitutes the governing body thereof; that defendant Arnold S. Zander is the International's president and defendant Gordon W. Chapman the general secretary thereof.

That, with respect to the suspension of locals and state councils and the revocation of their charters, the procedure and powers of the general president and executive board relative thereto, as set forth in the constitution, are as follows:

"ARTICLE X. OFFENSES, TRIALS, PENALTIES, APPEALS.

\* \* \* \* \*

"Section 2. *Any local having charges preferred against it may be suspended by a two-thirds vote of the general executive board, but only after being notified in writing and being given an opportunity to present its defense to the board.* Such suspension by the general executive board may be reviewed and removed by a majority vote of the next convention."

"ARTICLE XIV. STATE COUNCILS.

"Section 1. All locals of state, county, and municipal employees or any of them within a state may form a state council. \* \* \* *but in no state shall there be more than one council for state, county, or municipal employees.*

\* \* \* \* \*

"Section 3. *All state councils of state, county, and municipal employees shall be subject to the rules and regulations of the Amer-*

*ican Federation of State, County, and Municipal Employees and the general executive board thereof.*

"Section 4. Upon application of the duly elected representatives of such councils the federation *may issue a charter under the same general conditions as those applying to new locals.*" (Italics supplied.)

That under said constitution the president has no power to suspend or revoke the charter of a local or state council of the International; that the general executive board is without power to *revoke* the charter of a local or state council *under any circumstances* and without power to suspend the charter of a local or state council *except by a two-thirds vote of said board, and then only after notice to said local or state council in writing, specifying the charges against such local or state council and affording it the opportunity to present its defense thereto to said general executive board.*

That, notwithstanding the foregoing limitation of powers, on September 14, 1944, the defendant Arnold S. Zander as president of said International notified the plaintiff council that "I do, therefore, hereby suspend the charter of the Minnesota Council of State Employees No. 19 effective today"; that such suspension was without any authority whatsoever; that at no time were any charges ever made against said council either in writing or otherwise; and that at no time did it have an opportunity for a hearing on any charges preferred against it.

That subsequently, on October 4, 1944, at a meeting in Madison, Wisconsin, the home office of the International, without the required notice or the filing of formal charges and without the reception of evidence, the general executive board of the International approved the action of the aforesaid Arnold S. Zander as president in suspending the charter of the plaintiff council and, further, *permanently revoked* said charter of the aforesaid Minnesota council.

That the aforesaid actions of the general executive board were contrary to the terms and provisions of the aforesaid constitution;

were not based upon a two-thirds vote of the general executive board; were without written charges, notice, or hearing; and were outside and in excess of the power of the said board.

That under the constitution of the International the general executive board was required to convene and convoke an International convention biennially commencing in 1943; that said board failed to convene and hold an International convention in 1943 and has failed to issue a call for an International convention in 1945; that under the constitution the International convention is the only body within the organization to which plaintiff Minnesota State Council may appeal against the illegal and unconstitutional action of said defendant Arnold S. Zander and the aforesaid International general executive board.

That plaintiffs have repeatedly demanded of defendants that they be accorded their constitutional rights, and all such demands have been refused; that defendants are attempting in violation of said constitution to form a new Minnesota State Council, although plaintiff council is entitled to be the sole council for Minnesota.

That, as a result of the aforesaid actions of the defendants, plaintiff council will be deprived of its charter and any right of appeal within the International from the arbitrary and illegal revocation thereof; that it will be deprived of its right and privilege to remain the sole council for the state of Minnesota; that it will suffer harm with respect to its bargaining position and status with relation to the governmental units for whom its members render service and labor, *and will be illegally and unconstitutionally deprived of property rights based on its federation with the said International;* that great and irreparable harm and damage will be suffered by it unless the relief prayed for is granted; and that plaintiffs have no adequate remedy at law.

That the Minnesota State Council has at all times complied with the rules and regulations of the International organization, engaged itself in organizing local unions, collecting dues, and gaining new members therefor; and that it has called at least eight different meetings throughout the state in the furtherance of a legislative

program which it has sponsored and which has been approved by various state labor federations in Minnesota.

■ Examination of the foregoing allegations and offers of proof indicates that this case deals primarily with the internal affairs of the International and its local affiliates and councils and with the efforts of plaintiffs to resist the unconstitutional and arbitrary actions of its International officers and executive board in revoking the charter of plaintiff council without notice of charges, without opportunity of presenting witnesses to disprove the same, and without otherwise complying with the articles of its constitution. The constitution delegates no power to the president to suspend either a local or a state council, and his actions in attempting to do so obviously were without authority. The constitution provides further that before the general executive board may suspend a local or state council written charges must be preferred, an opportunity for hearing thereon be presented, and that suspension be by a two-thirds vote of the board. Presumably, none of these provisions were complied with here.

It is likewise to be noted that the constitution does not give the executive board power to *revoke* a charter of either a local or state council; but, on the contrary, its power is limited to suspension, subject to appeal and review by the general convention of the International. Pending determination of such an appeal, it was intended that further proceedings looking toward suspension should be held in abeyance.

If the allegations of the complaint can be established, the actions here challenged in all respects have been violative of the constitution of the International. However, if the construction urged by defendants is correct and this controversy is held to be a "labor dispute" within the statutory definition above referred to, it must follow that plaintiffs are without recourse and must helplessly submit to the violation of their rights. Likewise, it must follow that the officers of any labor organization under such an interpretation may with impunity violate the articles and by-laws thereof and deny to members rights and privileges conferred upon them therein; or

that strangers thereto, by threats or violence, may gain control thereof without fear or danger of interference by the courts.

We do not believe such a result was intended by the legislature or desired by organized labor. In construing § 185.18, subd. 4, we cannot escape the conclusion that before a dispute may be regarded as a "labor dispute" within the definition of that section it must relate to a "controversy concerning terms or conditions of *employment*," or "concerning association * * * of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of *employment*." Such disputes may exist, as the statutes contemplate, at times when the disputants comprise rival groups of employes not in the proximate relationship of employer and employe, but, nevertheless, if such disputes involve *employment*, the anti-injunction act (Minn. St. 1941, c. 185) is clearly applicable. It is obvious that the legislature in enacting such legislation had in mind that labor organizations should not, through the medium of temporary or permanent injunctions, which in the past oftentimes nullified their lawful attempts to improve the economic position of their members through collective bargaining, be hamstrung or handicapped in their efforts at collective bargaining or in the exercise of their constitutional right to picket or strike. The anti-injunction statutes cannot be construed to mean that members of labor organizations should be denied the protection of the courts when their individual rights have been violated and when prescribed methods of appeal within the organization have been circumvented, where no question of *employment* or of *employer and employe relations* or *conditions of employment* is involved. To hold otherwise would be to extend the purpose of the act beyond the intention of the legislature and beyond the desires and interests of organized labor.

Other states in construing similar statutes have adopted this viewpoint. Thus, in LaRose v. Possehl, 156 Misc. 476, 477, 282 N. Y. S. 332, 333, the New York court stated:

"The defendants rely chiefly upon the claimed lack of jurisdiction in this court to grant a temporary injunction because of the provisions of section 876-a of the Civil Practice Act (added by Laws of 1935, chap. 477). That section was enacted for the purpose of curing abuses that had theretofore existed and by which the use of the temporary injunction had become a familiar weapon of employers in disputes with their employees and had been used by them as a means of coercing employees and breaking strikes. I am of the opinion that the Legislature in passing this beneficial amendment to the Civil Practice Act did not contemplate placing a restriction upon the courts which would prevent them from interfering at the behest of an ousted workman against a labor organization which had unlawfully interfered with his rights.

"Reliance is placed by the defendants on paragraph (a) of subdivision 10 of the section wherein it is provided that 'a case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft or occupation, or who are employees of one employer; * * * whether such dispute is between one or more employers or associations of employers and one or more employees or associations of employees.' The defendant labor union would have the court read that section as if there came within the prohibition of the Legislature any matter in which a labor union or employees' association is involved. A careful analysis of the subdivision in question clearly demonstrates that the Legislature in fact did not intend the section to be that broad and sweeping. It is necessary to read subdivision 10 as an entirety in order to define the intent of paragraph (a) thereof. Paragraph (c) of subdivision 10 defines a labor dispute as 'any controversy concerning terms or conditions of employment or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in relation of employer and employee.' The present case does

not come within this definition of a labor dispute since the terms or conditions of employment are not involved, but the only question at issue is an internal dispute between the members of an association itself as to whether or not the plaintiff shall be recognized as such a member. This is a subject as to which the courts have repeatedly exercised jurisdiction, and I do not believe that in the absence of clear language to the contrary, the Legislature intended to divest the Supreme Court of its power of review."

In Tucker v. Gilmore, 172 Misc. 132, 134, 14 N. Y. S. (2d). 221, 222, the court stated:

"Essentially, the action is one involving a dispute between a parent union and a subsidiary of it. Controversies involving revocation of charters have occurred frequently, and they are not basically *labor disputes.* If they were, any action of a union in expelling a member would entitle either party to claim that the matter was a *labor dispute* and as such necessitates a hearing and findings of fact pursuant to section 876-a of the Civil Practice Act.

"The mere fact that the incidental effect of the revocation of the charter of a subsidiary would imperil employment, as likewise would the expulsion of an individual member, does not render it a *labor dispute* in the technical sense so as to require the disregard of affidavits and the actual trial of issues."

In Columbia River Packers Assn. Inc. v. Hinton, 315 U. S. 143, 145, 62 S. Ct. 520, 521, 86 L. ed. 750, 753, where the United States Supreme Court adopted this view, it was stated:

"We think that the court below was in error in holding this controversy a 'labor dispute' within the meaning of the Norris-LaGuardia Act. That a dispute among businessmen over the terms of a contract for the sale of fish is something different from a 'controversy concerning terms or conditions of employment, or concerning the association * * * of persons * * * seeking to arrange terms or conditions of employment' [29 USCA, § 113] calls for no extended discussion. This definition and the stated public policy of the Act—aid to 'the individual unorganized worker * * *

commonly helpless * * * to obtain acceptable terms and conditions of employment' and protection of the worker 'from the interference, restraint, or coercion of employers of labor' [29 USCA, § 102]—*make it clear that the attention of Congress was focussed upon disputes affecting the employer-employee relationship,* and that the Act was not intended to have application to disputes over the sale of commodities.

"We recognize that by the terms of the statute there may be a 'labor dispute' where the disputants do not stand in the proximate relation of employer and employee. *But the statutory classification, however broad, of parties and circumstances to which a 'labor dispute' may relate does not expand the application of the Act to include controversies upon which the employer-employee relationship has no bearing.* Our decisions in New Negro Alliance v. Sanitary Grocery Co., 303 U. S. 552, 304 U. S. 542, 58 S. Ct. 703, 82 L. ed. 1012, and Milk Wagon Drivers' Union v. Lake Valley Farm Products, Inc., 311 U. S. 91, 61 S. Ct. 122, 85 L. ed. 63, give no support to the respondents' contrary contention, for in both cases the employer-employee relationship was the matrix of the controversy.

"* * * For, the dispute here, relating solely to the sale of fish, does not place in controversy the wages or hours, or other terms and conditions of employment, of these employees." (Italics supplied.)

Defendants rely upon Green v. Obergfell, 73 App. D. C. 298, 121 F. (2d) 46, 138 A. L. R. 258 (*certiorari* denied [1941] 314 U. S. 637, 62 S. Ct. 72, 86 L. ed. 511), to uphold their contention that this is a labor dispute and hence that the court has no jurisdiction. That case involved a jurisdictional dispute between two Internationals, both affiliated with the American Federation of Labor. The issue as to whether the controversy constituted a labor dispute within the definition of the federal anti-injunction statutes (Norris-LaGuardia Act [Act of March 23, 1932, 47 Stat. 70, 29 USCA, §§ 101, *et seq.*]), which are similar to the Minnesota act, did not arise in the federal district court, which issued an injunction en-

joining the defendant Teamsters Union from preventing employers of labor, by correspondence, picketing, or personal violence, hiring men affiliated with plaintiff Brewery Workers Union. On appeal, the court of appeals for the District of Columbia determined, as the foregoing clearly established, that a labor dispute concerning terms and conditions of employment was involved, necessitating allegation and proof of the five statutory prerequisites to the issuance of an injunction. Therein the court of appeals stated (73 App. D. C. 304, 121 F. [2d] 52):

"* * * The essence of the dispute was the right of the Brewery Workers Union, on the one hand, and of the Teamsters on the other, to organize particular workers for collective bargaining purposes."

And immediately preceding this statement, the court of appeals said:

"* * * *That employer-employee relationships were involved, however, is obvious* from the pleadings, the evidence, the judgment, and the injunction issued." (Italics supplied.)

See, also, Union Premier Food Stores, Inc. v. Retail Food C. & M. Union (3 Cir.) 98 F. (2d) 821, 825; United Elec. Coal Cos. v. Rice (7 Cir.) 80 F. (2d) 1; Raevsky v. Upholsterers Int'l Union, 38 Pa. D. & C. 187; Meltzer v. Siegelman, 174 Misc. 994, 22 N. Y. S. (2d) 235.

In the instant case, employer and employe relations are not involved. The dispute is confined to the members of the same organization, and the principal question presented is whether or not the constitution of the International has been violated. Clearly, the facts alleged would not establish the existence of a labor dispute within the statutory definition thereof and under the authorities cited.

■ Since the facts do not indicate the existence of a labor dispute within the meaning of the aforesaid statutes, we do not attempt to pass on further questions that may subsequently arise in the trial court. That court considered only the one issue and did

not decide questions which, presumably, could be determined only upon the presentation of evidence necessary to establish plaintiffs' right to injunctive relief under § 585.02.  It has repeatedly been held that where a labor union or other private organization proceeds in violation of its constitution or by-laws such actions are void for want of jurisdiction, and redress therefor may be had in the courts by members whose rights have been circumvented or violated, provided adequate tribunals within the organization have not been provided for.  See, Mixed Local of H. & R. Employees Union v. Int'l Alliance, 212 Minn. 587, 4 N. W. (2d) 771; Malmsted v. Minneapolis Aerie, No. 34, O. of E. 111 Minn. 119, 126 N. W. 486, 137 A. S. R. 542; Ellis v. A. F. of L. 48 Cal. App. (2d) 440, 120 P. (2d) 79; Gardner v. Newbert, 74 Ind. App. 183, 128 N. E. 704; Local No. 1226 v. Ross, 180 La. 293, 156 So. 357; Barbrick v. Huddell, 245 Mass. 428, 139 N. E. 629; Webster v. Rankins (Mo. App.) 50 S. W. (2d) 746; Lo Bianco v. Cushing, 117 N. J. Eq. 593, 177 A. 102 (affirmed, 119 N. J. Eq. 377, 182 A. 874) ; Local No. 7 v. Bowen (D. C.) 278 F. 271; Furniture Workers Union Local 1007 v. United Brotherhood, etc., 6 Wash. (2d) 654, 108 P. (2d) 651; Cox v. United Brotherhood of Carpenters and Joiners, 190 Wash. 511, 69 P. (2d) 148; Knuth v. Lepp, 180 Wis. 529, 193 N. W. 519; Reichert v. United Brotherhood of Carpenters and Joiners, 14 N. J. Misc. 106, 183 A. 728; People ex rel. Deverell v. M. M. P. Union, 118 N. Y. 101, 23 N. E. 129; 20 Minn. L. Rev. 657, 660; 16 Minn. L. Rev. 328.

The language of this court in Mixed Local of H. & R. Employees Union v. Int'l Alliance, 212 Minn. 587, 4 N. W. (2d) 771, *supra,* would appear particularly applicable here.  Therein this court stated, at the respective pages indicated (212 Minn. 597-9, 592, 599, 4 N. W. [2d] 777-8, 775, 778) :

"Implicit in any remedial procedure is the obligation of those charged with the administrative function to render the procedure effective to accomplish its purposes. * * *

* * * * *

"Redress \* \* \* must be sought by exhaustion of intra-union remedies before there can be recourse to the courts.

\*　\*　\*　\*　\*

"Here the proceedings were strictly according to the law of the international union. Hence the remedies within that organization must be exhausted before plaintiffs can resort to the courts.

\*　\*　\*　\*　\*

"\* \* \* Whether it be in the courts of the land or private tribunals, a person is entitled to his day in court. In the matter of expulsion and suspension of members, an association is bound by the rules of fair play, or, as it is sometimes called, due process within the organization. *Constitutions and by-laws relating to such matters are construed in the light of principles of fundamental justice and constitutional right to due process so as to require specification of charges, notice, and hearing. The law implies or imposes requirements for due process where an association's rules are silent with respect to the matter.*

\*　\*　\*　\*　\*

"\* \* \* In the event that the general executive board should by such action render an appeal ineffective to review the general president's decision, the international union would be held to have waived compliance with its laws requiring exhaustion of remedies within the organization. In Skrivanek v. Brotherhood of L. F. & E. 198 Minn. 141, 144, 269 N. W. 111, 112, *supra,* we said:

" 'Of course any unreasonable delay on the part of either of those tribunals would deprive the appealing party of his substantial contract rights and act as a waiver of any rule or regulation requiring that a decision first be obtained from the highest tribunal within the order before civil action is commenced.' " (Italics supplied.)

If the evidence here, when properly presented, discloses that the constitution of the International has been violated; that rights and privileges guaranteed to plaintiffs thereunder have been unlawfully taken from them; and that the officers or the general board of the International have delayed the calling of a national convention so as to render ineffective plaintiffs' intra-union remedies, then un-

questionably plaintiffs are entitled to recourse to the courts for the preservation and enforcement of their rights. We do not attempt to say here whether, upon the presentation of evidence, the trial court will be required to issue either a temporary or permanent injunction, as these matters must be determined in the light of the evidence presented and within the reasonable discretion of that court. We conclude only that up to the present time discretion has not been exercised, evidence has not been presented or weighed, nor the relief sought by plaintiffs considered, because of the court's belief that there was involved a labor dispute within the definition of § 185.18, subd. 4, which prevented jurisdiction.

■ Defendants urge that the constitutional provisions referred to relate only to the suspension of the charter of a *local union* and have no application to a *state council* here involved. We direct attention to Article XIV, section 4, of the constitution which indicates that rules applicable to locals likewise apply to state councils.

■ Defendants further assert that under the court's general power to issue injunctions the complaint fails to allege facts sufficient to authorize jurisdiction therein, in that there is no allegation of loss of substantial property rights by virtue of defendants' actions.[3] As indicated, the complaint includes allegations to the effect that:

If defendants are permitted to continue with, and consummate, their scheme to organize a new and different state council, plain-

[3]The statute with reference thereto provides (Minn. St. 1941, § 585.02 [Mason St. 1927, § 9386]):

"When it appears by the complaint that the plaintiff is entitled to the relief demanded, and such relief consists wholly or partly in restraining the commission or continuance of some act which, *if permitted during the litigation, would work injury to the plaintiff,* or *when during the litigation it appears that the defendant is about to do, or is doing, or threatening, procuring, or suffering to be done, some act in violation of plaintiff's rights respecting the subject of the action, and tending to make the judgment ineffectual,* a temporary injunction may be granted to restrain such act. Where, during the pendency of an action, it appears by affidavit that the defendant threatens or is about to remove or dispose of his property, with intent to defraud his creditors, a temporary injunction may be granted to restrain such removal or disposition." (Italics supplied.)

tiffs will be deprived of their rights and privileges of remaining and being the sole state council for the state of Minnesota, and will be illegally deprived of property rights based on its federation with said International; and that great and irreparable harm and damage will thereby be suffered.

It would seem that such allegations are sufficient to permit plaintiffs to present evidence from which the court may determine whether defendants' actions, if permitted, would work injury to plaintiffs so as "to make the judgment ineffectual" within the meaning of § 585.02. We cannot pass upon what the evidence will disclose or determine now whether it will establish violation of plaintiffs' property or contract rights, nor can we decide whether the threatened injury is real and substantial and will cause damage or irreparable injury for which plaintiffs are without an adequate remedy at law. Such matters are for the trial court's determination. See, 20 Minn. L. Rev. 657; 16 Minn. L. Rev. 328.

Reversed with directions to proceed in accordance herewith.