(95 Misc. Rep. 695)

REED v. NATIONAL ORDER OF DAUGHTERS OF ISABELLA et al.

(Supreme Court, Special Term, Oneida County. June, 1916.)

1. MANDAMUS ☞159—ALTERNATIVE WRIT—NECESSITY—DETERMINATION.

On a motion for mandamus to a fraternal order to compel the reinstatement of the movant as a member of a local court, where there is no answer in the form of a pleading, whether anything more than a question of law is involved, so as to require the issuance of an alternative writ, is to be determined from the moving papers and the affidavit of the defendant's attorney; the uncontroverted allegations of the petition and affidavit being deemed true.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 324, 325; Dec. Dig. ☞159.]

2. MANDAMUS ☞155(2)—PROCEEDINGS—EFFECT OF AFFIDAVIT.

On application for mandamus to a fraternal order to compel reinstatement of a member of a local court, the affidavit of the supreme regent and national secretary, presented by the attorney for the order, may be accepted as a truthful statement of facts; the conclusions and opinions therein being disregarded.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 310; Dec. Dig. ☞155(2).]

3. INSURANCE ☞694(2)—BENEFICIAL ASSOCIATIONS—MEMBERSHIP—EXPULSION—GROUNDS.

Where the laws and rules of a national fraternal order provide that any officer of a subordinate court absenting herself from three regular meetings in succession, unless excused by a majority of her court, shall forfeit her office, the act of the grand regent of a local court, in acting as presiding officer when the court declares vacant the office of a trustee who has been absent for six regular business meetings in succession and refuses to present an excuse when given an opportunity, and elects a new trustee, is no justification for expulsion of the grand regent, even if the contention be sustained that the only remedy of a local court under the rule mentioned is to report the case to the national body and have it declare the office vacant.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1835; Dec. Dig. ☞694(2).]

4. INSURANCE ☞694(2)—BENEFICIAL ASSOCIATIONS—MEMBERSHIP—EXPULSION—GROUNDS.

The presiding officer of a local court of nearly 400 members, of a fraternal order, cannot be said to have power to control the action of the court in directing its treasurer to refuse to comply with the request of the state regent to send the books, warrants, and vouchers to a distant part of the state, and such action does not justify her expulsion from membership by the national body.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1835; Dec. Dig. ☞694(2).]

5. INSURANCE ☞694(2)—BENEFICIAL ASSOCIATIONS—MEMBERSHIP—EXPULSION—PROCEDURE.

A member of a fraternal order, before expulsion, is entitled to a fair trial before an impartial tribunal, and if the method is not regulated by the laws of the association, it should be analogous to ordinary judicial proceedings, so far, at least, as to permit substantial justice.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1835; Dec. Dig. ☞694(2).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. INSURANCE ⬰694(2)—BENEFICIAL ASSOCIATIONS—MEMBERSHIP—EXPULSION—PROCEDURE.

Those who allege irregularity in a proceeding to expel a member of a fraternal order must be held to strict proof, for no presumption will be indulged to support a forfeiture.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1835; Dec. Dig. ⬰694(2).]

7. INSURANCE ⬰694(3)—BENEFICIAL ASSOCIATION—REMOVAL OF MEMBER—RECOURSE TO COURTS—SCOPE OF INQUIRY.

While the court, on an application to compel the reinstatement of a member of a fraternal order, cannot consider the weight of the evidence, yet, if the determination of the national body of the order is unsustained by any substantial evidence, it is subject to review and correction.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1834, 1835; Dec. Dig. ⬰694(3).]

8. INSURANCE ⬰694(2)—BENEFICIAL ASSOCIATIONS—MEMBERSHIP—EXPULSION—VOTE REQUIRED.

Under General Corporation Law (Laws 1909, c. 28 [Consol. Laws, c. 23]) § 34, providing that the act of a majority of a quorum present at a meeting of a board of directors shall be the act of the board, where there is nothing in the laws of a fraternal order designating the number of votes required to expel a member, the vote for expulsion should be by a majority of the directors present, not merely a majority of those voting; there being nothing to the contrary in the Membership Corporations Law (Consol. Laws, c. 35).

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1835; Dec. Dig. ⬰694(2).]

Application by Isabel W. G. Reed for mandamus to the National Order of the Daughters of Isabella and others. Granted.

Warnick J. Kernan and Daniel E. Meegan, both of Utica, for petitioner.

Russell H. Brennan, of Utica, for defendants O'Donnell, Henry, and Wankel.

P. H. Fitzgerald, of Utica, for National Order of Daughters of Isabella and others.

DEVENDORF, J. [1] Motion by Isabel W. G. Reed for an order directing that a peremptory writ of mandamus issue against the National Order of the Daughters of Isabella and its national officers and board of directors, commanding them to convene and reinstate her as a member of Court Utica No. 1 of the Daughters of Isabella, or, if the applicant's right to mandamus does not depend upon questions of law only, then that an alternative writ issue. No answer in the form of a pleading has been served, and whether there is anything more than a question of law involved is to be determined from the petitioner's moving papers and the affidavit submitted by the national advocate, Mr. Fitzgerald. The uncontroverted allegations of the petition and the statement of facts in such affidavit are to be deemed true. People ex rel. Croft v. Keating, 49 App. Div. 123, 63 N. Y. Supp. 71; People ex rel. Corrigan v. Mayor, 149 N. Y. 215, 43 N. E. 554.

[2] Considering the facts as disclosed by the papers and records, according to the rule above announced, I am of the opinion that this

---

⬰For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is not a case for an alternative writ of mandamus. If this is correct, then questions of law only arising upon the undisputed facts are involved in this controversy, viz. whether petitioner is entitled to a peremptory writ or not. There is a question whether the affidavit of the supreme regent (Mrs. Walsh) and the national secretary (Mr. Kelly) may be regarded as the allegations of the defendant, the National Order of the Daughters of Isabella, but as it is presented by the national advocate of said order I give it the benefit of the doubt, and shall deem it a truthful statement of the facts, not, however, considering the conclusions and opinions contained therein as allegations of fact. They must be disregarded. Matter of Pierce, Butler & Pierce Mfg. Co., 62 Hun, 265, 16 N. Y. Supp. 768; People ex rel. Rau v. York, 31 App. Div. 527, 52 N. Y. Supp. 401, 1060.

March 29, 1916, Miss Reed, the petitioner, was the grand regent of said Court Utica No. 1 of the Daughters of Isabella, and had been a member in good standing therein for more than 12 years, it being a subordinate court of the National Order of the Daughters of Isabella, which is a membership corporation organized and incorporated under the laws of the state of New York, having its principal office at Utica, N. Y., and its principles are to promote the social and intellectual standing of its members, literary purposes, and the rendering of such aid and assistance among its members as shall be desirable and proper, and by such lawful means as shall seem best.

On the 20th day of March, 1916, the supreme regent of the national order preferred charges against Miss Reed, and subsequently a trial thereof was had before ten members of the national board of directors and officers of said national order, which resulted in five members of such trial body voting to sustain the charges and expel her from the order, two in the negative, and three not voting. The charges preferred were somewhat general in form, but finally resulted in two definite accusations, viz.: (1) The action of Court Utica No. 1 in removing Catherine N. Kelly as trustee and electing a successor to her, and in continuing to recognize and sustain such successor after notice from the national board of directors that the appeal of said Catherine N. Kelly had been sustained by that body; (2) the proceeding of said court in directing its treasurer to refuse to comply with the request of Katherine M. Rosney, state regent, to send its books, warrants, and vouchers to Poughkeepsie, N. Y., for examination.

Involved in these two specific charges is the part Miss Reed, as grand regent, took to bring about and sustain the doings of her court in that regard, and she is charged with willful insubordination and a contempt of the superior authority of the national board of directors in connection therewith. She claims such expulsion was illegal; that five members of such tribunal had no power under the facts and law to deprive her of a membership in this organization and take from her the property rights which she owned therein, a mortuary fund being connected with the order. See Constitution, Laws, and Rules, § 108.

[3] The material facts are not in dispute, as stated, and there should be either a peremptory writ of mandamus or a dismissal of

the petition. There are several reasons why I think the petition should be sustained and a peremptory writ granted. In the first place it appears without dispute that Mrs. Kelly, holding a position as trustee, was absent from six successive regular meetings, and that the court had power to declare her office forfeited in the absence of an explanation or excuse on her part. At least, it is sufficiently debatable that bad faith could not be imputed to a member or officer taking part in declaring such forfeiture. Her office being deemed vacant, the act of selecting Miss Brazill to fill the vacancy does not furnish sufficient grounds for the harsh remedy of expulsion, especially so when we consider that the petitioner neither acted nor voted upon that question, excepting as she presided as grand regent at the meeting and subsequently recognized the action as valid.

That she could control the vote of the court upon such a question cannot be successfully urged. That Court Utica No. 1 acted within the scope of the laws and rules of the National Order (section 102), which provides that "any officer of a subordinate court absenting herself for three regular meetings in succession, unless excused by a majority vote of her court, shall forfeit her office," when it declared Mrs. Kelly's office forfeited, appears reasonable, particularly so when she had been absent for six regular business meetings in succession and refused to present an excuse when given an opportunity. The majority vote of her court had the power to excuse the forfeiture; hence power may be inferred to declare it.

The national board by the affidavit filed herein takes the position that:

"The national body has always held that the only remedy which a local court had under section 102 of the laws of the order was to certify and declare the fact that any officer named had been absent from three successive meetings and to ask the national body to declare the office vacant, and the appeal of said Catherine N. Kelly was the first appeal on just that point to come before said board of directors, and said board of directors have never accepted or sustained or maintained the right or authority in any local court to remove any member from office or expel any member for any cause whatever, except for nonpayment of dues."

Granting that position to be correct, that it was a matter within the jurisdiction of the national body, yet, without a positive rule of action to guide the subordinate body, its members might well understand conscientiously that the power was vested in them to declare an office vacant, especially where there had been six successive unexcused absences and a subsequent refusal to explain them. In Brendon v. Worley, 8 Misc. Rep. 253, 28 N. Y. Supp. 557, it was held:

"Where there is no ambiguity in the by-laws of an association, but their meaning is clear and precise, opinions of superior officers of the order with which it is connected as to their meaning are inadmissible."

The opinion of the superior officers in the case at bar cannot control in the matters under consideration. Assuming that they are right in their conclusion that it was a matter for the national body to determine, that certainly does not give the power to expel a member in good standing for taking part in or sustaining the vote of the subordinate order, especially when there are not only personal but prop-

erty rights and pecuniary interests concerned. Rudolph v. Southern Beneficial League, 7 N. Y. Supp. 135.

Assuming all the facts claimed on the part of the national advocate to be established, and inferences to be drawn therefrom, together with the uncontroverted allegations of the petition, affidavits, and records submitted in reference to the charge as to the forfeiture of Mrs. Kelly's office, and the subsequent proceedings in regard thereto, no sufficient or legal reason is established thereby to justify Miss Reed's expulsion.

[4] Upon the other question as to the action of said court, and Miss Reed's participation therein, in directing its treasurer to refuse to comply with the request of State Regent Rosney to send the books, warrants, and vouchers to Poughkeepsie, there is but little to be said, because clearly the records of the court (subject to proper examination by the national body) are under the jurisdiction of the members of such court. I find no authority in the constitution, laws, or rules of the national or subordinate courts, and none has been pointed out to me, to remove the books and records of the court to a distant part of the state—full right of examination on the part of the superior body is given; nothing more.

This court has a membership of nearly 400, and Miss Reed as grand regent thereof cannot be said to have the power to arbitrarily control the action of that number of individuals; she was not responsible, so far as the records disclose, for the act of the court. Whether its determination was right or wrong it is not necessary to discuss here; upon Mrs. Manion's resolution the vote to withhold the books from transportation to Poughkeepsie was 190 to 9.

It may be said, however, that the language of subdivision 2 of section 51 of the laws and rules of the National Order defines the power of the district or territorial deputies, and which under subdivision 3 of section 50 is likewise made the power of a state regent. It is simply enacted that they shall "inspect the books, vouchers and accounts of courts within the district and may at any time demand them for examination." It does not provide, as does subdivision 2 of section 38, which defines the duty of the committee on finances and audit, that they "shall be entitled to the possession thereof and all officers shall deliver the same to them."

It will be observed by the above that the state regent is empowered to inspect the books and may demand them for examination. It does not provide that the grand regent of the subordinate court shall assume the hazard, risk, or duty, if you choose, to forward such books or records to another part of the state. It is very probable that this could have been done and without serious chance, but a failure or refusal to do so by the subordinate court does not in my opinion penalize the grand regent to the extent of expelling her from her court and depriving her of rights of membership and property therein. A contrary construction of the laws and rules of the order would be a harsh, unreasonable, and unwarranted one.

Therefore, assuming to the petitioner the fullest power within the possible latitude of the language of the laws and rules of the or-

ganization, I unhesitatingly reach the conclusion that there has been no act, affirmatively or of omission, on her part which authorized the supreme body to deprive her of her rights of membership. If there has been a violation of the constitution, laws, and rules of the National Order, it is not the action of the petitioner, but the action of Court Utica, made up of the large membership above mentioned.

[5] The petitioner was entitled to a fair trial before an impartial tribunal, and if the method was not regulated by the laws of the association, it should be analogous to ordinary judicial proceedings, so far, at least, as to permit substantial justice. Wachtel v. Noah W. & O. Ben. Soc., 84 N. Y. 28, 38 Am. Rep. 478.

[6] Where such serious results as expulsion from membership follow, those who allege irregularity in the procedure to expel must be held to strict proof, for no presumption will be indulged to support a forfeiture, which the law abhors. People v. Medical Society, 32 N. Y. 193.

It has been held that refusal of a treasurer in Journeyman Stone Cutters' Association to surrender his books and papers to a special committee appointed to investigate a certain bill or account, when by the by-laws he was only required to surrender his books and papers to the trustees to be audited, or to be delivered to his successor, was not sufficient ground for suspension of membership. Connell v. Stalker, 21 Misc. Rep. 609, 48 N. Y. Supp. 77. The presumption is against the power to expel because it is in the nature of a forfeiture, which, as stated above, the law does not favor. White v. Brownell, 4 Abb. Prac. (N. S.) 162.

[7] I am aware of the fact that it is not proper for the court here to consider the weight of the evidence and to substitute its judgment thereon for the judgment of the national body; but if their determination of the petitioner's guilt of the charges is unsustained by any substantial evidence, such determination should here be considered as contrary to law and natural justice, and so subject to review and correction. Fritz v. Knaub, 57 Misc. Rep. 411, 103 N. Y. Supp. 1003, and cases cited.

There is a further question upon which I think something may properly be said, and that is that the vote of expulsion was not by a majority of the national directors and officers present at the trial. The trial board consisted of ten members (as stated heretofore), three of whom did not vote; five voted for expulsion and two were opposed. To permit petitioner to be deprived of membership and property rights by the vote not of a majority of those voting on the charges is to sanction and judicially approve a method of trial in the membership corporation which is contrary to law.

[8] There is nothing (as I understand it) in the laws and rules of the national order designating the number of the national board of directors to carry a vote of expulsion. Therefore the majority rule should prevail. There should be at least a quorum, and the affirmative vote should be by a majority of those present and participating in the trial. Section 34 of the General Corporation Law (Laws of 1909, c. 28) provides that the affairs of every corporation

shall be managed by its board of directors; unless otherwise provided, a majority thereof at a meeting duly assembled shall be necessary to constitute a quorum for the transaction of business, and the act of a majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors. In the absence of a definite rule in the laws of the national organization for such a trial, and as to the necessary number of the national board to announce a valid result, the statutory provisions above stated should control. A quorum should be a majority of all the directors, and the act of a majority of those present shall be the act of the board, not a majority of the members voting.

Where a corporation is authorized to take any action by the agreement or action of its directors, managers or trustees, it may be taken by such directors regularly convened as a board and acting by a majority of a quorum, except when otherwise expressly required by law or by the laws of the corporation. General Corporation Law, § 43.

The argument of the national advocate as to the Membership Corporations Law, and its force and effect on the questions at bar, has not been overlooked; but I think there is nothing in that law which is controlling herein as against the provisions referred to of the General Corporation Law, but, on the contrary, there is language therein which sustains the contention that the act of expulsion should be by a majority vote of the members of the trial body.

At the close of the trial Mrs. O'Donnell, one of the national directors, made the pertinent suggestion whether it had been clearly brought out that it was not Miss Reed who elected the new trustee in place of Mrs. Kelly; that it was not Miss Reed who refused to send the books to the state regent, but it was Court Utica No. 1. I agree with the evident force of those suggestions. The minutes of the court show its affirmative action in each of the two material matters charged against Miss Reed. The proof does not establish the allegations against her, and the record is without facts to sustain the expulsion; she had social membership and property rights which could not be taken from her by the national body. The conceded facts and undisputed records do not confer the necessary legal power upon it to do that. There was also a failure of a majority vote of the directors and officers at the trial. Peremptory writ of mandamus granted, with costs.

Motion granted, with costs.