[No. 27870. Department One. December 23, 1940.]

FURNITURE WORKERS UNION LOCAL 1007 *et al., Respondents*, v. UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA *et al., Appellants.*[1]

[1]Reported in 108 P. (2d) 651.

*L. Presley Gill,* for appellants.

*Houghton, Cluck & Coughlin,* for respondents.

ROBINSON, J.—In this appeal, the assignments of error are as follows:

"(1) The trial court erred in entering judgment for the plaintiffs.

"(2) The trial court erred in sustaining the demurrer to the second affirmative defense contained in the defendants' amendment to their answer.

"(3) The trial court erred in entering judgment against the marital community of the individual defendants."

Appellants state that the following questions are involved in the appeal:

"(1) Where the constitution and by-laws of a parent labor organization provide that upon the suspension of a member union all property held by said union is to be held in trust by the parent organization, and further provides a method of appeal within the organization, may the suspended union resort to the courts without appealing within the organization?

"(2) Where a member labor union has been suspended by the General President of the parent organization, should a demurrer be sustained to an affirmative defense in a court action which offers a complete hearing within the organization?

"(3) Where the officers and trustees have turned over the funds and property of the union to the parent organization upon orders of the General President, should a judgment be entered against the marital communities composed of said officers and trustees and their wives?"

It will be noted that neither the assignments of error nor the statement of questions involved raise any question as to the accuracy of the findings of fact. We take it, then, that the only question raised by the first assignment is: Do the findings of fact and conclusions of law support the judgment entered? The findings and conclusions are as follows:

"(1) Furniture Workers Union Local 1007, hereinafter called Local 1007, is and at all times herein mentioned has been, a labor union and a voluntary unincorporated association with a membership too numerous to be made parties plaintiff, and all of whom are workers employed in the furniture industry in King County, Washington. Local 1007 came into existence about November 17, 1933, and on that date was chartered as a beneficial local union by defendant United Brotherhood of Carpenters and Joiners of America. Sometime in 1934 Local 1007 changed from a beneficial local union to a non-beneficial local union and received a new charter as a non-beneficial local. Plaintiffs Joseph Black, John Johnson and William Mortland are members and are, respectively, president, recording secretary and financial secretary of Local 1007. The other individual plaintiffs, Glen Myers and Harold Egbert, are members of Local 1007. All of the individual plaintiffs are fairly representative of the membership of Local 1007. They were duly authorized by Local 1007 and its members to bring this action, and have brought it on behalf of all members of Local 1007.

"(2) Defendant United Brotherhood of Carpenters and Joiners of America, hereinafter called the Brotherhood, is and at all times herein mentioned has been, an international labor union and an unincorporated association composed of a large number of members too numerous to be made parties defendant, including a large number of members who are citizens and residents of the State of Washington. The Brotherhood has affiliated with it a number of local unions whose field of operations is within the State of Washington. The Brotherhood is doing business within the State of Washington and within King County.

"Furniture Workers Union Local 2097, hereinafter called Local 2097, is a labor union and a voluntary unincorporated association composed of a number of members too numerous to be made parties defendant. It was chartered by the Brotherhood on December 29, 1937. Almost all of its members were members of Local 1007 just prior to their becoming members of Local 2097. All of the male defendants except Howard Bennett and John Truman are members of Local 2097 and of the Brotherhood, and are fairly representative of the membership of Local 2097. Defendant John Truman was a member of Local 2097 on and after December 29, 1937, but he has recently ceased to be a member. Defendant Charles Goucher and defendant George Bartholomew are, respectively, president and business agent of Local 2097.

"Defendant Howard Bennett is a member of the Brotherhood and the general representative of the Brotherhood in the State of Washington.

"Jane Doe Goucher, Jane Doe Bartholomew, Jane Doe Truman, Jane Doe Wright, Jane Doe Anderson, Jane Doe Brighton, Jane Doe Kaylor, Jane Doe Johnson and Jane Doe Bennett, whose true Christian names are not shown by the evidence, are and at all times herein mentioned have been the wives, respectively, of Charles Goucher, George Bartholomew, John Truman, T. B. Wright, Ted Anderson, Peggy Brighton, Don Kaylor, Harold Johnson and Howard Bennett. The acts of the male defendants, all of whom are citizens and residents of the State of Washington, hereinafter described, were done for and on behalf of and

in the interests of the marital communities which they with their wives constitute, and in all cases except that of Howard Bennett were done for and on behalf of the members of Local 2097 and as members of Local 2097. All of the members of Local 2097 knew of these acts and accepted the fruits thereof.

"(3) On December 20, 1937, without making any charges against Local 1007 and without giving any notice or hearing and without any trial or granting any opportunity to be heard, the Brotherhood and its president, William Hutcheson, suspended Local 1007. On December 21, 1937, defendant Howard Bennett, acting as agent of the Brotherhood and its president, William Hutcheson, accompanied by defendant George Bartholomew and defendant John Truman, entered the office of Local 1007 at 204 Traders Building, Seattle, and took therefrom one filing cabinet of the value of $4.00, one addressograph of the value of $30.00, one mimeograph of the value of $30.00, one typewriter of the value of $15.00, two oak typewriter stands of the value of $8.00, one desk of the value of $20.00, one table of the value of $20.00, forty folding chairs of the value of $40.00, twelve arm chairs of the value of $50.00, one paper-cutter of the value of $12.00, one swivel chair of the value of $10.00, six cuspidors of the value of $3.00, and numerous contracts and agreements, books and records, the charter of Local 1007, its seal, and a large amount of correspondence. The value of the use of the above tangible property since December 21, 1937, has been $5.00 per month. All of this property was the property of Local 1007 and its members.

"Within a few days defendant Howard Bennett, still acting under the instructions of and as agent of the Brotherhood, turned over all of this personal property to Local 2097 and its officers and members, except the charter and seal of Local 1007, which defendant Howard Bennett sent to the Brotherhood at Indianapolis, Indiana. Since that time Local 2097, its officers and members, have continued to hold possession of said property and to use it as their own.

"(4) On December 21, 1937, Local 1007 and its members were also the owners of the sum of $3,954.42 in

money. Some of this money made up a general fund of Local 1007 which was used for the current running expenses of the local. The balance of the money constituted an emergency or strike fund which had been set up by Local 1007 principally in order to provide benefits for its members during times when they were on strike. $3,119.61 of this money was, on and about December 21, 1937, in the custody and control of a committee consisting of defendants John Truman, T. B. Wright and Ted Anderson. Under instructions from the Brotherhood, defendant Howard Bennett requested these defendants to turn over this money to him. This they did, and subsequently he turned the money over to Local 2097, its officers and members.

"$834.81 of the total of $3,954.42 was in a checking account under the control of defendant George Bartholomew and defendant Peggy Brighton, who were then president and treasurer, respectively, of Local 1007. These two defendants wrote a check in the sum of $520.00 payable to defendant Howard Bennett, who was again acting in the matter under instructions of and as agent of the Brotherhood, and Bennett turned over the $520.00 thus obtained to Local 2097, its officers and members. Subsequently and on February 17, 1938, the balance of $314.81 in the general fund of Local 1007 was discovered and defendants George Bartholomew and Peggy Brighton, who were by that time members of Local 2097, turned over this amount of money to Local 2097, its officers and members.

"All of the members of Local 2097 were aware that the money thus obtained from Local 1007 had been turned over to Local 2097, and the members of Local 2097 used this money as their own.

"(5) After its suspension by the Brotherhood, Local 1007 continued to exist and function with a membership varying between forty and ninety. On February 16, 1937, plaintiff John Johnson, then recording secretary of Local 1007, mailed to the General Executive Board of the Brotherhood, at their office in Indianapolis, Indiana, the letter dated February 15, 1938, which is set forth in Paragraph II of the Bill of Particulars of plaintiffs. On or about March 10, 1938, plaintiff John Johnson mailed to the General Execu-

tive Board of the Brotherhood, at their office in Indianapolis, Indiana, the letter dated March 10, 1938, set forth in Paragraph II of the Bill of Particulars of plaintiffs. The first letter was sent by registered mail. Both letters were received by the General Executive Board of the Brotherhood, but the Board did not answer them nor communicate with Local 1007 concerning their subject-matter. After the suspension of Local 1007 the Brotherhood chartered a local union at Huntington, Indiana, and gave it the name and number of Local Union 1007.

"The last General Convention of the Brotherhood was held in December, 1936. The General Convention will not meet again until September, 1940."

[The letters found in the foregoing paragraph 5 to have been written by the secretary of Local 1007 to the general executive board of the brotherhood on February 15, 1938, and on March 10, 1938, respectively, read as follows:

"Dear Sirs and Brothers:

"On December 22 last the office of our organization at 204 Traders Building was entered by Howard Bennett, the representative of the United Brotherhood, and furniture, equipment, records and all property illegally removed.

"The following day, December 23, we received a telegram stating that this local was suspended at the office of the general president, Wm. L. Hutcheson.

"The organization has instructed me to write to you and ask for the date of your next meeting, and also what is the earliest date that you could cause a hearing on this matter.

"As our organization is considering appealing our case to your honorable body, we would appreciate a reply to this letter as soon as possible..

"Thanking you for your anticipated cooperation, we are"

"Dear Sirs and Brothers:

"We have so far received no reply to our letter of February 15 last, asking for a hearing in our case. It

is of vital importance to us that this matter be taken care of as soon as possible. Therefore, we would like to ask that you give us a reply at your earliest possible convenience, and inform us as to what you can do about this matter."]

"From the foregoing findings of fact, the court makes and enters the following

"CONCLUSIONS OF LAW

"I. Upon their first cause of action, plaintiffs are entitled to judgment against the Brotherhood, against Local 2097 and against defendant Charles Goucher and the marital community composed of Charles Goucher and Jane Doe Goucher, his wife, defendant George Bartholomew and the marital community composed of George Bartholomew and Jane Doe Bartholomew, his wife, defendant John Truman and the marital community composed of John Truman and Jane Doe Truman, his wife, defendant T. B. Wright and the marital community composed of T. B. Wright and Jane Doe Wright, his wife, defendant Ted Anderson and the marital community composed of Ted Anderson and Jane Doe Anderson, his wife, defendant Peggy Brighton and the marital community composed of Peggy Brighton and Jane Doe Brighton, his wife, defendant Don Kaylor and the marital community composed of Don Kaylor and Jane Doe Kaylor, his wife, defendant Harold Johnson and the marital community composed of Harold Johnson and Jane Doe Johnson, his wife, and defendant Howard Bennett and the marital community composed of Howard Bennett and Jane Doe Bennett, his wife, in the sum of $3,954.42, together with interest at 6% per annum on $3,639.61 from December 21, 1937, and interest at 6% per annum on $314.81 from February 17, 1938, and for their costs and disbursements herein to be taxed; and plaintiffs are entitled to judgment in the same total amount of $3,954.42, together with the amounts of interest above stated and together with their costs and disbursements herein to be taxed, against all of the members of Local 2097, so far only as it may be enforced against the property of Local 2097 which is the joint property of all of the members of Local 2097.

"II. Upon their second cause of action, plaintiffs are entitled to judgment in the sum of $105.00 as the value of the use of the property therein described, and for the return to plaintiffs of the filing cabinet, addressograph, mimeograph, typewriter, two oak typewriter stands, desk, table, forty folding chairs, twelve armchairs, paper-cutter, swivel chair, six cuspidors, contracts and agreements, books and records and correspondence, and in case a return of such property cannot be had, for the value of said property, to-wit, $242.00, against the Brotherhood, Local 2097, defendant Charles Coucher and the marital community composed of Charles Goucher and Jane Doe Goucher, his wife, defendant George Bartholomew and the marital community composed of George Bartholomew and Jane Doe Bartholomew, his wife, defendant John Truman and the marital community composed of John Truman and Jane Doe Truman, his wife, defendant T. B. Wright, and the marital community composed of T. B. Wright and Jane Doe Wright, his wife, defendant Ted Anderson and the marital community composed of Ted Anderson and Jane Doe Anderson, his wife, defendant Peggy Brighton and the marital community composed of Peggy Brighton and Jane Doe Brighton, his wife, defendant Don Kaylor and the marital community composed of Don Kaylor and Jane Doe Kaylor, his wife, defendant Harold Johnson and the marital community composed of Harold Johnson and Jane Doe Johnson, his wife, and defendant Howard Bennett and the marital community composed of Howard Bennett and Jane Doe Bennett, his wife; and against all of the members of Local 2097 so far only as it may be enforced against the property of Local 2097 which is the joint property of all of the members of Local 2097."

In our opinion, these findings and conclusions fully support the judgment appealed from.

Technically speaking, there is no basis for the first question proposed by the appellants. There is no finding, nor, as far as we can determine, was any finding requested, to the effect that there was a method of appeal within the organization. However, since the

parties to the appeal have discussed that question at length, we will also discuss it.

The record shows that the constitution of the appellant brotherhood, which, as we have held in *Cox v. United Brotherhood of Carpenters and Joiners of America,* 190 Wash. 511, 69 P. (2d) 148, constitutes a contract between it and its members, provides for an appeal to the general executive board by a local which deems itself wrongly or unlawfully suspended, and from that board a final appeal to the general convention. But in such an appeal no stay of proceedings is allowed. It is provided, however, as follows:

"Section 56. A member must exhaust his resources allowed by the constitution and laws of the United Brotherhood before taking his case to the civil courts."

The court has found in this case, and no assignment of error is directed at the finding, that the respondent union attempted to initiate an appeal and the brotherhood paid no attention to its communications. But, wholly apart from that, the court has also found that Local 1007 was deprived of its charter and records and its property seized without any notice, charges, trial, or other opportunity to be heard.

It is the settled law that such arbitrary action is void. From the multitude of cases which could be cited, we select only those in which this very appellant or its officers were involved. *Cox v. United Brotherhood of Carpenters etc., supra; Reichert v. United Brotherhood of Carpenters etc.,* 14 N. J. Misc. 106, 183 Atl. 728; *Swaine v. Miller,* 72 Mo. App. 446; *Neal v. Hutcheson,* 160 N. Y. Supp. 1007.

It is equally well settled that resort may be had to the courts before exhausting remedies within the organization when the act of suspension or expulsion is arbitrary, unlawful, and void. *Cox v. United Brotherhood of Carpenters etc., supra; Ray v. Brotherhood of*

*Railroad Trainmen,* 182 Wash. 39, 44 P. (2d) 787, and cases therein cited and quoted. This court and many others have held that exhaustion of remedies within the organization is not a prerequisite to an appeal to the courts when the procedure within the organization is expensive, slow, and subject to great delay. *Local Lodge No. 104 etc. v. International Brotherhood of Boiler Makers etc.,* 158 Wash. 480, 291 Pac. 328, and cases therein cited. Nor is it necessary to exhaust the remedy within the organization where it appears that such procedure would be futile and vain. In so holding in *Local No. 373 etc. v. International Ass'n etc.,* 120 N. J. Eq. 220, 184 Atl. 531, the court said:

"The proofs in this case show, and they are not contradicted, *that protests by the members to the International were not even replied to."* (Italics ours.)

The court's affirmative answer to the first question involved in this appeal was clearly correct.

■ The second of the three assignments of error is to the effect that the court erred in sustaining a demurrer to the second affirmative defense. The answer of the defendants was a sweeping denial. After the trial had gotten under way, on September 14, 1939, the defendants amended their answer by attaching affirmative defenses. The second affirmative defense read as follows:

"(1) The United Brotherhood of Carpenters and Joiners of America will, within five (5) days from September 14, 1939, on or before September 19, 1939, file charges in writing against the plaintiffs in this action, and cause the same to be served on them personally as soon as they can be reached, and serve a copy of said charges upon Houghton, Cluck & Coughlin, attorneys for the plaintiffs on or before September 19, 1939.

"(2) That said charges will be accompanied with a written notice of hearing, designating a certain place in the City of Seattle, Washington, and a time for said

hearing to commence, which will not be later than September 25, 1939, and a reasonable continuance thereof will be granted to the plaintiffs upon written request directed to the General President.

"(3) That thereafter, and based on such testimony as may be adduced at said hearing, a decision will be rendered by the General President.

"(4) That the plaintiffs herein, if they shall feel aggrieved by said decision, will be permitted to take an appeal to the General Executive Board, which will be disposed of by said Board at its next meeting immediately following the filing of all necessary papers to perfect the said appeal.

"(5) That the plaintiffs herein, if they shall feel aggrieved by said decision of the General Executive Board, will be permitted to take an appeal to the Convention of the United Brotherhood of Carpenters and Joiners of America which will convene at some time and place fixed by the General Executive Board during September, 1940. That in event the plaintiffs appeal from the decision of the General Executive Board, they will be notified of the time and place of said convention."

An oral demurrer was interposed to this defense, upon which the court reserved its ruling. Well along in the trial, when evidence was offered in support of the defense, it sustained the demurrer. In this ruling, the court was clearly right. The so-called defense was no more than an offer to try the controversy between the parties before another tribunal.

Appellants cite the case of *State ex rel. Rowland v. Seattle Baseball Ass'n*, 61 Wash. 79, 111 Pac. 1055, 31 L. R. A. (N. S.) 512. It is in no way in point. There, a baseball league has expelled a member club without notice. It sought reinstatement through an action in mandamus. The court said, in part:

"We think, under the constitution, the league had the power to terminate the membership, upon giving reasonable notice that it desired to do so. It did not give the notice, and its acts were therefore illegal. It

does not follow, however, that we should direct the league to reinstate the Aberdeen club. A careful reading of the record discloses that such an order would serve no useful purpose. The league could, and doubtless would, upon reasonable notice, terminate its membership in pursuance of its constitutional right. . . . The writ 'will not lie to compel such admission to a corporate franchise, when it is plainly apparent that the applicant, if admitted, will be immediately expelled, such a case being regarded as an eminently proper one for the exercise of judicial discretion by withholding the writ.' High, Extraordinary Legal Remedies (3d ed.), § 287."

This is not an action in mandamus. Local 1007 is not seeking reinstatement. It is an action for the conversion of property, and this tardy declaration by the defendants that they were ready and willing to submit the controversy to the decision of the general president of the principal defendant, who, the record shows, is the officer who personally ordered the conversion to be made, plainly constituted no defense to the action.

The third assignment is to the effect that "the trial court erred in entering judgment against the marital communities of the individual defendants." We have very recently decided that exact question, adversely to the appellants' contention, in a case in which an affiliated local of the appellant brotherhood was plaintiff. *Local No. 2618 etc. v. Taylor*, 197 Wash. 515, 85 P. (2d) 1116. We incorporate herein, by reference, the ruling made in subdivision [3] of that opinion.

The judgment appealed from is affirmed.

BLAKE, C. J., MAIN, MILLARD, and SIMPSON, JJ., concur.