# MIXED LOCAL OF HOTEL AND RESTAURANT EMPLOYEES UNION LOCAL NO. 458 AND OTHERS v. HOTEL AND RESTAURANT EMPLOYEES INTERNATIONAL ALLIANCE AND BARTENDERS INTERNATIONAL LEAGUE OF AMERICA AND OTHERS.[1]

June 19, 1942.

No. 33,125.

[1]Reported in 4 N. W. (2d) 771.

588

*Helstein & Hall,* for appellants.
*Joseph A. Padway* and *John A. Goldie,* for respondents.

PETERSON, JUSTICE.

This action was brought by Mixed Local of Hotel and Restaurant Employees Union Local No. 458, its executive board members, and certain officers to enjoin defendant Kilday from acting as trustee of the local union under appointment by the general president of defendant Hotel and Restaurant Employees International Alliance and Bartenders International League of America. An order to show cause was issued why defendants should not be adjudged to be in contempt for violation of an *ex parte* restraining order. From an order dismissing the action and the contempt proceedings, plaintiffs appeal.

The international and local unions are unincorporated voluntary associations standing in the relation of parent or superior and subordinate organizations, the international being the parent or superior and the local the subordinate organization. The membership is composed of persons engaged in preparing and serving food and beverages. The international has 696 affiliated unions throughout the United States and Canada. The local has a membership of about 1,500 cooks, waiters, waitresses, and certain other hotel and restaurant employes in Minneapolis.

Both the international and the local union operate under the international union's written constitution, which defines in detail the organization, mode of operation, and powers of the international and all local unions. A local union and its membership are required to conform to the constitution, laws, rules, and regulations of the international union.

The constitution provides for the discipline of international union officers and of local unions and their officers and members. The general president of the international is vested with vast disciplinary powers, subject to right of appeal to the general executive board. The general executive board has the power to suspend the charter and officers of a local union. Under the title of "International Discipline," it is given the power, among other things, to enforce discipline on local unions, to try cases involving danger and disgrace to a local union, and to pass judgment on cases appealed to it. It has the power to appoint a referee to hear cases and report them to the board for decision.

Provision is made for the trial of offenses in violation of the constitution. Preferment of charges, notice, and hearing are required. Appeals are authorized. Appeals from the decisions of the general president may be taken to the general executive board and in certain cases from those of the general executive board to the general convention. Among other things, it is provided that appeals shall be heard on the record of the trial body; that decisions on appeals shall be rendered as promptly as possible after hearing; that the appellate officer or body shall hear all appeals without unnecessary delay, with notice to interested parties of the hearing; and that the secretary shall promptly transmit to the appellate body or officer the record in the case, including the minutes, decisions, and documents.

Any local union aggrieved by disciplinary action of the international is required to exhaust the remedies within the organization before resorting to the courts, by § 156 of the constitution, which provides:

"Every affiliate, member, or officer thereof, or International officer against whom charges have been preferred, and disciplinary action taken as a result thereof, shall be obligated to exhaust all remedies provided for in this Constitution and by the International before resorting to any other court or tribunal."

At its 1941 convention, the international union adopted § 88(a)[2]

[2]"If the General President decides that any of the officers of a local union are dishonest or grossly incompetent, or that the organization is not being conducted for the best interests of the Local and International he may appoint a Trustee (receiver) to take charge and control of the affairs of the Local Union.

"The Trustee shall be authorized and empowered to take full charge of the affairs of the Local Union, to remove for the period of his trusteeship any or all officers, and appoint temporary officers during his trusteeship, and to take such action as in his judgment is necessary for the preservation of the Local Union and its interests. The Trustee shall report from time to time on the affairs and transactions of the Local Union to the General President. The Trustee's acts shall be subject to the supervision of the General President.

"The suspended officers shall turn over all moneys, books, and property of the Local Union to the Trustee, who must receipt for the same.

"Temporary officers and trustees must be members in good standing of Local Unions in good standing. If required to do so by the General President, they shall give bonds for the faithful discharge of their duties.

"The Trustees shall take possession of all the funds, books, papers and other property of the Local Union, and tender a receipt for same. He shall pay all outstanding claims, properly proved, if funds are sufficient. If the funds are not sufficient, he shall settle the most worthy claims, as his judgment dictates, unless otherwise provided for in this Constitution.

"When the Trustee recommends self-government be restored, and such recommendation is approved by the General President, the Trustee shall return all funds, books, papers, and other property to the Local Union. If, however, the charter of the Local Union is suspended or revoked, then any balance remaining to the credit of the Local Union shall be forwarded to the General Secretary-Treasurer, who shall hold it in trust for the purpose of reorganization.

"Such trusteeship may continue for one year.

"An appeal from a decision of the General President, establishing a trusteeship, shall be to the General Executive Board. But pending such appeal, the order of the General President shall remain in full force and effect."

for the avowed purpose, according to the convention proceedings, of depriving local unions of their autonomy "promptly, effectively, and without red tape" in cases where "certain elements invade the ranks and make it impossible to conduct business." This section authorizes the general president to appoint a trustee to take charge and control of the affairs of a local union when he "decides" that a local's officers are dishonest or grossly incompetent or that the local is not being conducted for the best interests of the local or the international. The duration of the trusteeship may not exceed a year. During its continuance, the local union's existence and rights are preserved, but its autonomy is suspended. An appeal is authorized to the general executive board from the general president's decision appointing a trustee, but pending the appeal the decision remains in full force and effect.

On August 28, 1941, without preferment of any charges against the local union or its officers, notice or hearing, the general president of the international union, under the powers vested in him by § 88(a), appointed the defendant Kilday, one of the international vice-presidents, trustee of the local union. Against such action certain members of the local union protested, but no appeal was taken from the general president's order to the general executive board. Pursuant to his appointment as trustee, Kilday took full charge and control of the local union, ousted the members of the local union's executive board who had not resigned prior to his appointment, suspended a special election set for August 29, took possession and control of the local union's office, meeting hall, furniture, books, records, charter, and bank account of $1,600, suspended all meetings of its members, and discharged two organizers who had been elected to serve until February 1942.

At the hearing below, the evidence by affidavit as to the existence of grounds for the exercise of the general president's power to appoint a trustee of the local union was in conflict.

Plaintiffs contend that the appointment of the trustee was illegal and void upon the grounds that it was made without preferment of any charges, notice, or hearing. Defendants contend that plain-

tiffs have no right to sue, because of their failure to exhaust their remedies within the union organization and that § 88(a) and the appointment of the trustee thereunder are justified as emergency measures.

1. The appointment of the trustee by the general president was in accordance with § 88(a) of the international union's constitution. Plaintiffs urge that the decision to appoint the trustee necessarily involved a determination that grounds existed for such action; that there can be no valid determination of such question without due process—charges preferred, notice, and hearing—and that, since § 88(a) contains no express provision for such requirements, it lacks due process; and that the appointment of the trustee thereunder without charges, notice, and hearing is invalid.

The absence of express provision in § 88(a) for due process is not decisive that it is not required. Whether it be in the courts of the land or private tribunals, a person is entitled to his day in court. In the matter of expulsion and suspension of members, an association is bound by the rules of fair play, or, as it is sometimes called, due process within the organization. Constitutions and by-laws relating to such matters are construed in the light of principles of fundamental justice and constitutional right to due process so as to require specification of charges, notice, and hearing. The law implies or imposes requirements for due process where an association's rules are silent with respect to the matter. Strong v. Minneapolis A. T. Assn. 151 Minn. 406, 186 N. W. 800; Burmaster v. Alwin, 138 Minn 383, 165 N. W. 135; Stevens v. Minneapolis F. D. R. Assn. 124 Minn. 381, 145 N. W. 35, 50 L.R.A.(N.S.) 1018; Ellis v. American Federation of Labor, 48 Cal. App. (2d) 440, 120 P. (2d) 79; Grassi Bros. Inc. v. O'Rourke, 89 Misc. 234, 153 N. Y. S. 493; Grand Grove United A. O. of D. v. Garibaldi Grove, 105 Cal. 219, 38 P. 947; Id. 130 Cal. 116, 62 P. 486, 80 A. S. R. 80; Curran v. O'Meara, 211 Mass. 261, 97 N. E. 907; Matter of Gallaher v. American Legion, 154 Misc. 281, 277 N. Y. S. 81.

The rule applies to trade unions the same as to other associations. Where a parent union expels or suspends subordinate one without charges, notice, or hearing, the expulsion or suspension is a nullity. Ellis v. American Federation of Labor, 48 Cal. App. (2d) 440, 120 P. (2d) 79, *supra;* Gardner v. Newbert, 74 Ind. App. 183, 128 N. E. 704; Local No. 373, Int'l. Ironworkers, etc. v. Int'l. etc., Ironworkers, 120 N. J. Eq. 220, 184 A. 531; Neal v. Hutcheson (Sup.) 160 N. Y. S. 1007; Bricklayers', P. & S. Union v. Bowen (Sup.) 183 N. Y. S. 855; Mayer v. Hansen, 260 App. Div. 150, 20 N. Y. S. (2d) 698; Kessler v. Brotherhood of Painters, etc. (Sup.) 13 N. Y. S. (2d) 892; Mayer v. Hutcheson (Sup.) 18 N. Y. S. (2d) 691; Furniture Workers U. L. 1007 v. United B. of C. and J. 6 Wash. (2d) 654, 108 P. (2d) 651; Cox v. United B. of C. and J. 190 Wash. 511, 69 P. (2d) 148. Notwithstanding its silence with respect to the matter, § 88(a) should be construed as requiring due process of law, that is, specification of charges, notice, and hearing.

We regard the appointment of a trustee of a local union as analogous to that of a suspension, since the necessary effect thereof is to suspend the local union's autonomy during the trusteeship.

2. Unless an appeal from the general president's decision appointing a trustee to the general executive board affords a local union due process, § 88(a) and the appointment of the trustee thereunder in the instant case are invalid. On this phase of the case we are confronted with the questions whether a hearing with the requirements of due process can be had on an appeal, whether the procedure on appeal in force when § 88(a) was adopted is applicable to appeals under that section, and whether for lack of an express procedure the procedural requirements of due process may be supplied by construction.

An appeal removes a cause from one tribunal to another for retrial both on the law and the facts. Dutcher v. Culver, 23 Minn. 415; Grimes v. City of Burlington, 74 Iowa, 123, 37 N. W. 106; In re Manufacturer's Freight Forwarding Co. 294 Mich. 57, 292 N. W. 678; In re Murdock, 7 Pick. (Mass.) 303; Bickford v.

Franconia, 73 N. H. 194, 60 A. 98; People ex rel. Figaniere v. The Marine Court, 2 Abb. Prac. (N. Y.) 126; City Council v. O'Donnell, 29 S. C. 355, 7 S. E. 523, 1 L. R. A. 632, 13 A. S. R. 728; Mackin v. Taylor County Court, 38 W. Va. 338, 18 S. E. 632. See United States v. Ritchie, 17 How. (U. S.) 525, 15 L. ed. 236.

In Dutcher v. Culver, 23 Minn. 415, 416, *supra,* in holding that an appeal from the probate to the district court under a statute authorizing an "appeal" in effect provided for a trial *de novo* in the district court, we said:

"The determination of the question before us depends upon the scope and meaning of the word 'appeal,' as here employed. Our statute nowhere in terms defines it. Save so far as its meaning is controlled or influenced by statute, there can be no doubt that it is properly defined as a proceeding by which a case is taken from an inferior to a superior tribunal, the determination of the former thereby vacated or suspended, and the case brought before the latter to be tried and determined *de novo.*"

Of course the trial on appeal may be restricted to review of mere questions of law, as where the appeal is from an administrative body or where the appellate court's jurisdiction is limited to review of the case made in the court from which the appeal is taken. State and R. R. & W. H. Comm. v. M. & St. L. R. R. Co. 209 Minn. 564, 297 N. W. 189; State v. G. N. Ry. Co. 130 Minn. 57, 153 N. W. 247, Ann. Cas. 1917B, 1201; School Dist. v. Callahan, 237 Wis. 560, 297 N. W. 407. But where the appeal is from one tribunal to another with trial jurisdiction, the general rule, applicable here, is that an appeal brings up the case for trial *de novo.* Dutcher v. Culver, 23 Minn. 415, and other authorities, *supra.*

It is plain that the provisions of the international union's constitution in force at the time § 88(a) was adopted, that appeals shall be heard on the record before the trial body, do not apply to appeals under that section. The provisions for appeals in force at the time § 88(a) was adopted related to appeals from the de-

cision of an officer or body where there was a trial, with notice and hearing and with a record which could be reviewed by the appellate officer or body. Those provisions are found in § 149, which is a separate subdivision entitled "Appeals."

Appeals under § 88(a) come to the general executive board without any record. There is no record for review on such an appeal. In the very nature of things, a record, if any, must be made before the general executive board. The question arises whether or not the word "appeal" in § 88(a) is used in a broad sense or in a restricted sense as in § 149.

For lack of authoritative construction, either practical or otherwise, by the tribunals of the international union, we must adopt what appears to be the intended meaning. The language itself clearly means that the review on appeal should be by a trial *de novo*. Dutcher v. Culver, 23 Minn. 415, *supra*. Purpose and context furnish tokens of the same meaning. The very purpose of an appeal is to rectify mistakes of judgment. People ex rel. Figaniere v. The Marine Court, 2 Abb. Prac. (N. Y.) 126, *supra*. The context clearly shows that the framers of § 88(a) had in mind both the scope of review on appeal and the effect of an appeal on the decision from which the appeal was taken, because provision was made that the general president's order should remain in effect pending appeal. By limiting the effect of an appeal in the respect mentioned, an intention was disclosed that in other respects the remedy by appeal should not be modified. The scope and manner of hearing on appeal, including the right to a trial *de novo*, were to remain unchanged.

The alternative is to adopt the construction that, by providing for a review on the record of the general president, which is nothing but an *ex parte* order appointing the trustee, § 88(a) authorizes an appeal which provides for no review at all and which is utterly futile and meaningless. Provision for such an appeal might just as well not have been adopted.

When reasonably possible, a construction of a writing should be adopted which gives it full force and effect. Likewise, a con-

struction will be avoided which nullifies or invalidates it in whole or in part. These considerations compel a choice in favor of a construction of § 88(a) which gives the appellants a full and complete review of the general president's order on appeal. It has no other reasonable meaning.

Although the provision that appeals shall be heard on the record before the trial body does not and cannot apply to appeals under § 88(a), the other provisions relating to notice and hearing on appeal are applicable. The provisions relating to the procedure by which a case is brought up for review are separable from the provisions relating to the scope of such review. No reason is apparent why the provisions of § 149 relating to notice and hearing are not applicable to appeals under § 88(a). Even if § 88(a) stood isolated without the benefit of the procedural provisions of other sections relating to appeals to implement appeals thereunder, the absence of provision for an express procedure would be no obstacle to appeals under that section. Where the method of procedure is not regulated by the law of an association, the procedure should be analogous to ordinary parliamentary proceedings. Gaps in the rules of procedure of voluntary unincorporated associations should be filled by the adoption of fair methods according to accepted principles in similar cases. Murdock v. Trustees of Phillips Academy, 12 Pick. (Mass.) 244; Ostrom v. Greene, 161 N. Y. 353, 55 N. E. 919; Matter of Reed, 95 Misc. 695, 160 N. Y. S. 907, affirmed, 177 App. Div. 949, 164 N. Y. S. 1110; Chafee, "The Internal Affairs of Associations Not for Profit," 43 Harv. L. Rev. 993, at p. 1015.

In Ostrom v. Greene, 161 N. Y. at p. 362, 55 N. E. 922, the court said: "Common parliamentary rules, in use by all deliberative assemblies in this country, may also be resorted to, in the absence of any made by the association itself, in considering the regularity of its proceedings."

In the Murdock case, 12 Pick. (Mass.) at p. 263, where the board of trustees of an academy was authorized by statute to remove a professor, but no procedure was prescribed, Mr. Chief Jus-

tice Shaw said that in a case where no precise forms are prescribed a procedure may be adopted which incorporates the fundamentals of due process.

In Wachtel v. Noah W. and O. Benevolent Society, 84 N. Y. 28, 38 Am. R. 478, it was held that, where the association's laws do not prescribe the manner of service of notices, service should be made according to the common law.

Here the provisions relating to notice and hearing on appeal under other sections incorporate the standards of due process which the parties require to be observed. We see no good reason why, if they do not by their terms apply to § 88(a), such provisions do not apply by analogy.

Implicit in any remedial procedure is the obligation of those charged with the administrative function to render the procedure effective to accomplish its purposes. Here, that duty, which comprehends giving a local union a trial *de novo* on appeal under § 88(a), rests on the general executive board. It has ample power to perform its functions, including that of appointing referees to hear and report cases. The headquarters of the international union is at the centrally located city of Cincinnati, which is about the same as that of Cleveland, the headquarters of the parent union considered in Skrivanek v. Brotherhood of L. F. & E. 198 Minn. 141, 269 N. W. 111.

3. A trial *de novo* before the general executive board on appeal from the general president's decision appointing a trustee affords a local union due process. A statute is not unconstitutional merely because it authorizes a ministerial act by which the possession of property is taken before the right to it has been judicially determined. Notice and hearing are indispensable requirements of due process, but there is no requirement that the same be afforded at any particular stage of the proceedings. Sluka v. Johnson, 177 Minn. 598, 225 N. W. 909. Where opportunity to be fully heard is afforded on appeal, the requirements of due process are satisfied. American Surety Co. v. Baldwin, 287 U. S. 156, 168, 53 S. Ct. 98, 102, 77 L. ed. 231, 86 A. L. R. 298, 306. In the Baldwin

case the court said: "Due process requires that there be an opportunity to present every available defense; but it need not be before the entry of judgment. (Citations.) An appeal on the record which included the bond afforded an adequate opportunity. Thus, the entry of judgment was consistent with due process of law." Accord: George Moore Ice Cream Co. Inc. v. Rose, 289 U. S. 373, 53 S. Ct. 620, 77 L. ed. 1265; Consolidated Edison Co. v. National Labor Relations Board, 305 U. S. 197, 59 S. Ct. 206, 83 L. ed. 126; 12 Am. Jur., Constitutional Law, § 611.

Our decision in State ex rel. Claude v. District Court, 204 Minn. 415, 283 N. W. 738, is not to the contrary. Decision there was put upon the grounds not of lack of due process, but the absence of facts justifying the action of the district court. We said (204 Minn. 420, 283 N. W. 741): "We are not deciding the issue on constitutional grounds."

Here the order of the general president can be reviewed on appeal. There is no finding, and the evidence by affidavit does not compel one, that the general president acted without just grounds.

There are cases to the contrary of the type of Neal v. Hutcheson (Sup.) 160 N. Y. S. 1007, 1010, which hold that a review by appeal does not afford due process. In that case the court said that due process means "a due trial upon charges before judgment, without the added burden of the presumption of correctness of a decision." Insofar as such cases hold that the hearing must in all cases be before judgment, they are erroneous and in conflict with American Surety Co. v. Baldwin, 287 U. S. 156, 53 S. Ct. 98, 77 L. ed. 231, 86 A. L. R. 298, *supra*, settling the rule to the contrary. And, insofar as the laws of the organizations involved in such cases provided that on appeal the decision below was presumed to be correct, they differ from the instant case, for here there is no such presumption, because on the appeal there is a trial *de novo* both on the law and facts without regard to the decision of the general president.

4. Redress of grievances must be sought by exhaustion of intraunion remedies before there can be recourse to the courts. Dewar

v. Mpls. Lodge No. 44, B. P. O. E. 155 Minn. 98, 192 N. W. 358, 32 A. L. R. 1012; Attig v. Int'l. Brotherhood of Teamsters, etc. 231 Iowa, 1, 300 N. W. 636; Harris v. Detroit Typographical Union, 144 Mich. 422, 108 N. W. 362; O'Connor v. Morrin, 109 Misc. 379, 179 N. Y. S. 599. Where a voluntary association such as a lodge or union proceeds without complying with its laws, its action is a nullity for want of jurisdiction, and redress may be had by direct resort to the courts without exhaustion of remedies within the organization. Malmsted v. Minneapolis Aerie, No. 34, O. of E. 111 Minn. 119, 126 N. W. 486, 137 A. S. R. 542; Ellis v. American Federation of Labor, 48 Cal. App. (2d) 440, 120 P. (2d) 79, *supra;* Nissen v. Int'l. Brotherhood, etc. 229 Iowa, 1028, 295 N. W. 858; Furniture Workers U. L. 1007 v. United B. of C. and J. 6 Wash. (2d) 654, 108 P. (2d) 651, *supra;* Cox v. United B. of C. and J. 190 Wash. 511, 69 P. (2d) 148, *supra.*

Here the proceedings were strictly according to the law of the international union. Hence the remedies within that organization must be exhausted before plaintiffs can resort to the courts.

5. Plaintiffs contend that they are not bound to pursue a remedy by appeal because an appeal would be futile and illusory. We are not justified in assuming in advance of the event that the general executive board would refuse to accord plaintiffs the hearing to which an appeal entitles them. Of course it lies within the power of that body to render an appeal nugatory by neglecting or refusing to function. In that situation, due process is denied not because the appeal does not afford the party due process, but because of action by those charged with administering the law contrary to its meaning and purpose. In the event that the general executive board should by such action render an appeal ineffective to review the general president's decision, the international union would be held to have waived compliance with its laws requiring exhaustion of remedies within the organization. In Skrivanek v. Brotherhood of L. F. & E. 198 Minn. 141, 144, 269 N. W. 111, 112, *supra,* we said:

"Of course any unreasonable delay on the part of either of those tribunals would deprive the appealing party of his substantial contract rights and act as a waiver of any rule or regulation requiring that a decision first be obtained from the highest tribunal within the order before civil action is commenced."

That plaintiffs had a remedy for their grievances within the organization which they were bound to exhaust before resorting to the courts is sufficient ground for affirmance. It is not necessary to pass on the questions whether or not § 88(a) and the appointment of the trustee thereunder are valid as emergency measures.

Affirmed.

MR. JUSTICE STONE, absent because of illness, took no part in the consideration or decision of this case.